2000 ND 223

STATE of North Dakota, Plaintiff and Appellee,

v.

Shawn Glenn HELMENSTEIN, Defendant and Appellant.

No. 20000062.

Supreme Court of North Dakota.

Dec. 27, 2000.

ing the confessions were admissible and the district court did not err in denying a change of venue.

## I

[¶ 2] Early on the morning of February 21, 1999, someone entered the House of Bottles liquor store in Bismarck, North Dakota, killed the store clerk, Robbie Rahrich, and stole money from the store. Bismarck police officers went to Montana to question Helmenstein, a former employee of the liquor store, who was reportedly in Bismarck at the time of the crime. Helmenstein confessed to the crimes, and waived extradition to North Dakota. When he was returned to North Dakota, Helmenstein accompanied law enforcement officers, at their request, and walked through the murder scene. He subsequently was taken before a North Dakota magistrate.

[¶ 3] Helmenstein's motion to suppress his confessions was denied. His motion for change of venue was also denied. The jury found Helmenstein guilty of both charges. Helmenstein appeals, arguing his confessions should have been excluded and venue should have been changed.

[¶ 4] The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–28–06.

## II

[¶ 5] Helmenstein argues his will was overborne and his waiver of *Miranda* rights was not knowing, voluntary, or intelligent. He argues the confessions elicited, both at the time of his arrest in Montana and upon his return to North Dakota, were improperly obtained. Although the confessions in this case are interrelated, for clarification we adopt the parties' convention of identifying four separate interviews: (1) an approximately 45–minute interview in the Clinton, Montana, home where Helmenstein was staying (he denied involvement in the murder and robbery);

Richard J. Riha, State's Attorney, and Rick L. Volk, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Robert W. Martin, Bismarck, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] A jury convicted Shawn Glenn Helmenstein of the class AA murder of Robbie Rahrich, and the robbery of the House of Bottles. He appeals. We affirm, conclud-

(2) an approximately 40–minute interview in the Montana home, after officers found the murder weapon and money from the robbery (Helmenstein first confessed); (3) an approximately 17–minute, tape-recorded confession; and (4) a videotaped walk-through of the murder scene. The first three took place between 9:15 a.m. and 11:15 a.m. on March 1, 1999, in Clinton, Montana. The fourth took place on March 2, 1999, in Bismarck.

[¶ 6] "[F]indings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994) (citations omitted).

### A

[¶ 7] The district court found, when the officers first arrived at the Montana home, they entered the home with the owner's permission. The officers "identified themselves and their purpose for wanting an interview with the defendant." Helmenstein invited officers to an office at the far end of the home. The office was furnished with a desk and a single chair. Helmenstein "occupied the chair while Officers Wooten and Haas conducted an interview of the defendant for approximately 45 minutes." The district court found the office door was open, no firearms were displayed, and neither officer blocked Helmenstein's "access route if he elected to leave."

[¶ 8] The officers then requested Helmenstein write a statement. During that time, with the owner's permission, the officers searched the home. While the officers were searching, Helmenstein "freely moved about the kitchen and living room areas of the mobile home." The officers discovered a firearm and money believed to be linked to the murder and robbery. After Helmenstein finished his statement,

the "officers then requested an opportunity to further interview the defendant." The interview was conducted in the same office, with Helmenstein again occupying the lone chair.

[¶ 9] The officers advised Helmenstein of discrepancies in his statement and advised him of his *Miranda* rights. He "acknowledged he understood" those rights. Helmenstein "voluntarily agreed to continue" the interview and confessed to firing the handgun that caused the victim's death. The district court found this second interview lasted approximately forty minutes.

[¶ 10] Finally, the officers conducted an approximately 17–minute, tape-recorded interview of Helmenstein. The district court found approximately two hours had elapsed from the time the officers first arrived until they had completed the interviews and the search of the Montana home.

[¶ 11] The next day, Helmenstein was flown from Montana to Bismarck. When he arrived, shortly after 5:00 p.m., Helmenstein was again advised of his *Miranda* rights and was asked to walk through the murder scene. The district court found Helmenstein "agreed to voluntarily participate in" the murder scene review.

[¶ 12] Helmenstein argues he was awakened by four or five armed officers, was denied food and drink, and was subjected to lengthy interrogation when the officers first interviewed him. Helmenstein argues the four interrogations "crossed the line from zealous investigation to actual police misconduct" and the district court therefore erred in not suppressing his statements. The State argues Helmenstein was not in custody at the time of his first confession, notwithstanding the arresting officer's subjective belief that Helmenstein was not free to leave. The State further argues the confessions were not coerced but were made freely and voluntarily and the district court did not err in admitting the statements at trial.

## B

[¶ 13] We first consider whether Helmenstein's confessions were obtained in violation of the United States Supreme Court decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The constitutional triggers requiring police to provide *Miranda* warnings are custody and interrogation. *Id.* at 444, 86 S.Ct. 1602. Whether a person was in custody is a mixed question of law and fact and is fully reviewable on appeal. *State v. Sabinash*, 1998 ND 32, ¶ 14, 574 N.W.2d 827 (citations omitted). The test of custody is "formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at ¶ 14 (citing *State v. Eldred*, 1997 ND 112, ¶ 10, 564 N.W.2d 283). The custody test is objective and does not depend on the arresting officer's subjective motive or thoughts. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *State v. Murray*, 510 N.W.2d 107, 110 (N.D.1994).

[¶ 14] Whether a person was in custody at the time of a confession is a mixed question of law and fact and is fully reviewable on appeal. *Sabinash*, 1998 ND 32, ¶ 14, 574 N.W.2d 827 (citation omitted). When evaluating whether a person was in custody, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Murray*, 510 N.W.2d at 110 (citing *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138). The district court found "the defendant was not placed in custody until the second interview which occurred at the" Montana home, and "prior to placing the defendant in custody, law enforcement officers had in fact advised the defendant of his Miranda rights with the defendant acknowledging his understanding of the same and his willingness to continue the interview with law enforcement officers." That Helmenstein was provided *Miranda* warnings subsequent to the first interrogation is undisputed. Therefore, only the first interview of Helmenstein need be considered for custodial-interrogation analysis.

[¶ 15] The district court's findings amply set forth that Helmenstein was not in custody at the time of the first interview. Although one of the North Dakota officers present testified he did not believe Helmenstein was free to leave after the murder weapon had been discovered, our only inquiry is how a reasonable person "would have understood his situation." *State v. Murray*, 510 N.W.2d 107, 110 (N.D.1994) (citing *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

[¶ 16] Helmenstein voluntarily participated in the interview, he invited officers to question him in an office at the far end of the home, the officers displayed no weapons, Helmenstein occupied the room's only chair, and the officers made no attempt to block his egress. These facts support the district court's conclusion that Helmenstein was not in custody. Further, the officers allowed Helmenstein to move freely about the kitchen and living room while they were searching the home.

[¶ 17] We conclude the district court's finding Helmenstein was not in custody is supported by "sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). Therefore, any statements Helmenstein made prior to receiving *Miranda* warnings were properly not excluded for lack of warnings.

## C

[¶ 18] We next consider whether Helmenstein's confessions were voluntary. "[V]oluntariness of a confession depends upon questions of fact to be resolved by the trial court, and because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness." *State v. Taillon*, 470 N.W.2d 226, 228 (N.D.1991) (citing *State v. Pickar*, 453 N.W.2d 783, 785 (N.D.1990); *State v. Dis-*

*coe*, 334 N.W.2d 466, 468 (N.D.1983)). This Court does not conduct a de novo review. *Discoe*, 334 N.W.2d at 470. We review the voluntariness of a confession based on the totality of the circumstances. *State v. Sabinash*, 1998 ND 32, ¶ 12, 574 N.W.2d 827. This "inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained. No one factor is determinative." *Id.* (citation omitted).

1

■ [¶ 19] The district court thoroughly reviewed the *Sabinash* factors in its order denying Helmenstein's pretrial motion to suppress his confessions. 1998 ND 32, ¶ 12, 574 N.W.2d 827. The district court found the defendant was of "at least average intelligence" and had obtained sufficient education to "engage in reasonable and meaningful conversation with law enforcement officers." The district court found the defendant was not disadvantaged or prejudiced by the method of questioning, and the court found no evidence that the conduct of the police compromised the voluntariness of the confessions.

[¶ 20] The district court found Helmenstein did nothing to "indicate any lack of voluntariness in his participation in" any interview, written statement, or walk-through of the crime scene. The court found Helmenstein had no "identifiable physical or mental handicaps." Further, the district court found the interview environment, the conduct of the officers, and Helmenstein's voluntary participation evidenced the free and voluntary nature of Helmenstein's confessions.

[¶ 21] The district court stated, "While it is apparent that the defendant had no prior criminal record, there is no evidence to support the suggestion by the defendant that he was disadvantaged or prejudiced in some manner by the methodology of police questioning." Further, the initial questioning took place in the presence of the homeowner and his family. The district court found the questioning "occurred in an environment and under circumstances which provided the defendant ample opportunity to exercise his constitutional right to refuse to answer questions of police, and to seek the advice of legal counsel if he so desired."

2

■ [¶ 22] As to his videotaped "walk-through" confession at the murder scene after he was returned to Bismarck, Helmenstein argues presumed lack of voluntariness because he was not brought before a magistrate without unnecessary delay as required by Rule 5(a) of the North Dakota Rules of Criminal Procedure. Helmenstein cites *State v. Barlow*, 193 N.W.2d 455 (N.D.1971), for the proposition that a three-day delay in bringing an accused before a magistrate is a questionable practice, and in some cases may be unreasonable. In *Barlow*, this Court stated unreasonable delay is "delay which furnishes an opportunity for interrogation and eliciting of damaging statements." 193 N.W.2d at 461.

[¶ 23] In this case, officers first contacted Helmenstein in Clinton, Montana, on March 1, 1999, at about 9:15 a.m. Approximately two hours later, Helmenstein was arrested by a Montana officer and taken to the Missoula County jail in Missoula, Montana. Helmenstein voluntarily waived his right to an extradition hearing later that day. Still on March 1, 1999, North Dakota officers transported Helmenstein from the Missoula County jail to a county jail in Billings, Montana. Later that day, the officers returned to Bismarck with personal property seized during the course of the investigation.

[¶ 24] The next day, March 2, 1999, officers returned to Billings, secured Helmenstein, and flew him to Bismarck. They arrived in Bismarck at approximately 5:00 p.m., and Helmenstein agreed to participate in a videotaped walk-through of the

murder scene. The next morning, March 3, 1999, at 9:00 a.m., Helmenstein appeared before the district court in Burleigh County. Thus, from the time of his arrest at approximately 11:15 a.m. (mountain time) on March 1, 1999, less than 45 hours had elapsed before Helmenstein appeared before the district court.

[¶ 25] This Court has held that delay itself is not determinative, but is one factor to consider in the totality of the circumstances when considering whether a confession is involuntary and, therefore, inadmissible. *State v. Newnam*, 409 N.W.2d 79, 85 (N.D.1987). Here, it is undisputed, the only evidence obtained as the result of any alleged delay were the videotaped crime scene walk-though and the statements made by Helmenstein upon his return to Bismarck. Deciding whether unnecessary delay has occurred depends upon the circumstances of each case. *State v. Frye*, 245 N.W.2d 878, 882 (N.D. 1976). "The term has been defined, not with reference to time as such, but with regard to whether the delay was utilized to interrogate or obtain damaging statements from the accused." *Id.* (citing *State v. Barlow*, 193 N.W.2d 455, 461 (N.D.1971); *State v. Ankney*, 195 N.W.2d 547, 552 (N.D.1972)).

[¶ 26] The district court held that the time between Helmenstein's arrest and his first appearance in court complied with Rule 5(a) of the North Dakota Rules of Criminal Procedure. The court specifically found "no basis to suggest that the defendant was unnecessarily detained" and there was no evidence to suggest the detention "was a contributing factor to the defendant's statements."

[¶ 27] Helmenstein was arrested by a Montana law enforcement officer who was assisting the North Dakota officers. Once in custody, Helmenstein was questioned by Montana authorities about an unrelated murder. The record does not establish the precise time when Montana authorities allowed North Dakota officers to remove Helmenstein from Montana. There was no evidence the officers delayed Helmenstein's return for the purpose of eliciting confessions or damaging statements from him. *See Frye*, 245 N.W.2d at 882 (unnecessary delay is more likely if delay is used to interrogate or obtain damaging statements). Considering the Montana arrest and Montana interests in questioning Helmenstein, the extradition waiver, the distance between Bismarck and Billings, the transportation from one Montana jail to another, and the officers' prompt return to deliver the defendant the day following his arrest, any alleged delay was, as the district court concluded, not in violation of Rule 5(a) of the North Dakota Rules of Criminal Procedure.

3

[¶ 28] This Court is deferential to a district court's decision regarding the voluntariness of a confession. *See State v. Taillon*, 470 N.W.2d 226 (N.D.1991) (voluntariness of a confession depends upon questions of fact to be resolved by the trial court, and great deference is afforded due to the trial court's superior position to judge credibility and weight). Reviewing the record, we conclude the district court's decision regarding the voluntariness of Helmenstein's confessions is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence. *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). Therefore, the district court did not err in determining Helmenstein's confessions were freely and voluntarily given.

D

[¶ 29] The district court did not err in admitting Helmenstein's confessions into evidence at his trial.

III

[¶ 30] Helmenstein argues the district court wrongly failed to change the venue of his trial. Prior to trial, defense counsel moved for a change of venue. The motion was renewed following selection of a jury.

The voir dire was transcribed. Helmenstein cites fourteen newspaper articles, extensive television coverage, and statements of the prospective jurors in support of his argument that a change of venue was necessary. Specifically, Helmenstein argues a lawyer in the jury pool had been swayed by the media coverage, so it was likely non-law-trained members of the jury pool had also been swayed. The lawyer in the pool was excused for cause at Helmenstein's request. Helmenstein argues the prosecutors and the district judge setting bond were quoted in the news media numerous times stating that the State's case was strong.

[¶ 31] The State argues the denial of Helmenstein's motion for change of venue was proper because he failed to meet his burden of establishing prejudice. The State argues it was not responsible for the news coverage and cites the time between the media coverage and trial, the absence of prejudice, the inconvenience to the State, and other factors to support affirming the district court's denial of a change of venue.

[¶ 32] A motion for change of venue is within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. *State v. Norman*, 507 N.W.2d 522, 526 (N.D.1993) (citing *State v. Purdy*, 491 N.W.2d 402 (N.D.1992)). The defendant has the burden of establishing that a fair and impartial jury could not be empaneled and that he suffered prejudice as a result of the denial of his motion to change venue. *State v. Ellis*, 2000 ND 177, ¶ 11, 617 N.W.2d 472 (citations omitted). "While there are some cases in which prejudice to the defendant is so clear that a change of venue should be ordered promptly, generally voir dire examination is an appropriate occasion to determine whether it is possible to select a fair and impartial jury." *Norman*, 507 N.W.2d at 526 (citing *State v. Leidholm*, 334 N.W.2d 811 (N.D.1983)).

[¶ 33] In deciding whether to change venue, trial courts are guided by eight factors, identified in *State v. Austin:*

(1) whether the publicity was recent, widespread, and highly damaging to the defendant; (2) whether the prosecution was responsible for dissemination of the objectionable material; (3) the extent of inconvenience to the prosecution; (4) whether a substantially better panel could be sworn elsewhere; (5) the nature and gravity of the offense; (6) the size of the community; (7) the defendant's status in the community; and (8) the popularity and prominence of the victim.

520 N.W.2d 564, 566 (N.D.1994) (citations omitted). The district court, relying on this Court's precedent, denied the pretrial motion for change of venue. When the motion was renewed after jury selection, the district court stated:

I am satisfied that the jury seated in this matter is a jury of qualified jurors who have the capacity and who have not been tainted by pretrial publicity in such a manner so as to deny the defendant a fair and impartial trial. I do not believe that the media coverage in this matter is sufficient so as to cause the jury panel pool to be beyond the capacity to meet standards set by the court and set by law with respect to impartiality and fairness to both the State of North Dakota and Shawn Helmenstein. Accordingly, I deny the motion for change of venue.

[¶ 34] The voir dire record is expansive. One hundred prospective jurors were called and eighty were questioned before a jury was empaneled. The district court permitted the parties to question prospective jurors individually, while other prospective jurors waited outside the courtroom. The district court, on its own motion, dismissed numerous prospective jurors because of their personal conflicts, their preconceived notions of guilt or innocence, and beliefs of theirs that may have been based on pretrial publicity. Both parties exercised peremptory challenges.

Helmenstein challenged prospective jurors for cause based on pretrial publicity. The district court granted Helmenstein's challenge for cause for prospective jurors who had been substantially exposed to pretrial publicity and had formed an opinion on the case. The district court also granted Helmenstein's challenge for cause for a prospective juror who was acquainted with a police officer scheduled to testify at trial. Helmenstein did not use all of his peremptory challenges.

[¶ 35] Although the district court did not make specific findings under *Austin* when Helmenstein renewed his motion for change of venue, the district court concluded Helmenstein had not met his burden of establishing prejudice or establishing that a fair and impartial jury was not empaneled. The extensive voir dire, the challenges for cause, and the district court's dismissal of jurors establish that a fair and impartial jury was empaneled, notwithstanding the absence of specific findings. We conclude the district court did not abuse its discretion in denying Helmenstein's motion for a change of venue.

### IV

[¶ 36] The criminal judgment and commitment of the district court is affirmed.

[¶ 37] VANDE WALLE, C.J., NEUMANN, MARING, JJ., LAWRENCE A. LECLERC, D.J., concur.

[¶ 38] LAWRENCE A. LECLERC, D.J., sitting in place of KAPSNER, J., disqualified.