2004 ND 163

**STATE of North Dakota, Plaintiff and Appellant**

**v.**

**Krystal HAIBECK, Defendant and Appellee.**

**No. 20040060.**

Supreme Court of North Dakota.

Aug. 9, 2004.

Brandi Sasse Russell, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellant.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1]  The State appeals from the trial court's order granting Krystal Haibeck's motion to suppress evidence related to four counts against her, and the trial court's subsequent order dismissing those four counts.  We reverse with regard to the suppression of physical evidence and the order of dismissal, and we remand for determination of which statements, if any, should remain suppressed.

I

[¶ 2]  On July 5, 2003, eighteen-year-old Krystal Haibeck was a passenger in a vehicle driven by nineteen-year-old Angelique Waliser. Highway Patrol Trooper Robert Arman stopped the vehicle for exceeding the speed limit and detected the odor of alcohol after he approached the vehicle.  Once he approached the vehicle, Officer Arman also recognized Haibeck from an arrest for an underage alcohol violation several days earlier.  Officer Arman questioned Waliser in his patrol car, where he confirmed Haibeck's identity. Officer Arman also conducted a field sobriety breath test of Waliser, which showed she had consumed alcohol.  At that point, Officer Arman cited Waliser for minor in consumption or possession of an alcoholic beverage and speeding.  He also informed Waliser that he would be searching her vehicle incident to the arrest.

[¶ 3]  Officer Arman then approached Haibeck and removed her from the vehicle. He placed Haibeck in the patrol car for questioning after returning Waliser to her vehicle.  Officer Arman later testified he continued to detect the odor of alcohol while speaking with Haibeck.  Upon questioning, Haibeck admitted to drinking. During this time, another officer searched Waliser's vehicle, but failed to discover any contraband.

[¶ 4]  While questioning Haibeck, after the officer searched Waliser's vehicle, Officer Arman noticed a necklace around Haibeck's neck that appeared to be a marijuana pipe; he questioned her about it. Haibeck confirmed it was used for marijuana.  Officer Arman detected the odor of marijuana emanating from the necklace and also noticed that it contained fresh residue.

[¶ 5]  After speaking with Haibeck further, Officer Arman conducted a second search of the vehicle and found a razor and a plastic vial with methamphetamine residue inside Haibeck's purse.  When confronted with the contraband, Haibeck confirmed the residue was, in fact, methamphetamine.  Officer Arman also found marijuana among Haibeck's belongings.  Haibeck and Waliser were then driven into Bismarck, where Waliser was released.  While driving, Officer Arman mentioned to Haibeck that he "should *Mirandize* her" and then

asked, "do you know your rights, Krystal?" Haibeck stated, "yes." Haibeck was taken to Burleigh County Detention Center, where Officer Arman arranged for her to be released after booking. Haibeck was charged with minor in consumption or possession of an alcoholic beverage, possession of marijuana paraphernalia, possession of marijuana, possession of methamphetamine, and possession of methamphetamine paraphernalia.

[¶ 6] Haibeck moved to suppress the physical evidence of the contraband and her statements, contending Officer Arman had failed to issue a *Miranda* warning before questioning her and searching the vehicle. The trial court granted the suppression motion and dismissed all four drug-related counts after holding Haibeck had not been properly advised of her *Miranda* rights during a police investigation.

[¶ 7] The State appeals, contending the trial court erred when it granted the motion to suppress. The State argues the search of Waliser's vehicle was reasonable under either the automobile exception to the warrant requirement or as a search incident to arrest. In addition, the State appeals from suppression of Haibeck's statements.

## II

[¶ 8] We have previously set forth our standard when reviewing a trial court's motion to suppress:

When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We affirm the district court's decision unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence.

*State v. Gregg,* 2000 ND 154, ¶ 19, 615 N.W.2d 515 (citations omitted). "The question of whether the facts found by the trial court meet a legal standard ... is a question of law which is fully reviewable." *State v. Steinmetz,* 552 N.W.2d 358, 360 (N.D.1996). In the context of a warrantless search of an automobile, "determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. United States,* 517 U.S. 690, 698, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

[¶ 9] All searches and seizures must be reasonable, under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the North Dakota Constitution. *State v. Utvick,* 2004 ND 36, ¶ 15, 675 N.W.2d 387. Under the warrant requirement, generally, "[w]hen an individual reasonably expects privacy in an area, the government must obtain a search warrant." *State v. Dunn,* 2002 ND 189, ¶ 4, 653 N.W.2d 688. "A warrant cannot issue except upon probable cause. Absent an exception to the warrant requirement, the exclusionary rule mandates suppression of evidence obtained in violation of the protection against searches conducted without a warrant because they are *per se* unreasonable." (Citations omitted.) *State v. Winkler,* 552 N.W.2d 347, 351–52 (N.D.1996). In the context of a warrantless search, "the lawfulness of the search depends upon whether it falls within one of the well-recognized and well-delineated exceptions to the warrant requirement." *State v. Lange,* 255 N.W.2d 59, 62 (N.D. 1977); *see also California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (holding, "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions"). If no such exception applies, "evi-

dence obtained in violation of the Fourth Amendment's protections against unreasonable searches must be suppressed as inadmissible under the exclusionary rule." *Dunn,* 2002 ND 189, ¶ 4, 653 N.W.2d 688.

### A

▆▆▆▆ [¶ 10] One such exception is known as the "automobile exception." *Carroll v. United States,* 267 U.S. 132, 153, 155, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Under the automobile exception, " 'contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant' where probable cause exists." *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (quoting, *Carroll v. United States,* at 153, 45 S.Ct. 280). Specifically, under *Carroll,* "[t]he measure of legality of such a seizure is . . . that the seizing officer shall have . . . probable cause for believing that the automobile . . . has contraband. . . ." *Carroll,* 267 U.S. at 155–56, 45 S.Ct. 280. *See also State v. Gregg,* 2000 ND 154, ¶ 33, 615 N.W.2d 515 (holding, "if the search of an automobile without warrant is made upon probable cause, based upon a reasonable belief arising out of the circumstances known to the officer—that the automobile contains articles which are subject to seizure—the search is valid"); *State v. Meadows,* 260 N.W.2d 328, 330 (N.D.1977) (holding, "[t]he search of an automobile, with or without a warrant, must be made upon probable cause, based upon a reasonable belief arising out of the circumstances known to the officer, that the automobile contains articles which are subject to seizure").

▆▆▆▆ [¶ 11] The automobile exception allows officers to search the belongings of passengers and driver alike:

> If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. [This applies] broadly to all containers within a car, without qualification as to ownership.

*Wyoming v. Houghton,* 526 U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (emphasis omitted).

[¶ 12] When searching a vehicle, the warrant requirement is excused "primarily because vehicles are inherently 'mobile' and can be 'quickly moved' out of the jurisdiction." *State v. Garrett,* 1998 ND 173, ¶ 19, 584 N.W.2d 502 (quoting *Chambers v. Maroney,* 399 U.S. 42, 50–51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). We also stated in *Garrett,* "searches of vehicles may be made under circumstances where searches of buildings would not be allowed because of the ambulatory character of automobiles, the lesser expectation of privacy as to automobiles, and the fact that automobiles are often within the plain view of officers." *Id.* at ¶ 14.

▆▆▆▆ [¶ 13] Generally, before an officer may stop a moving vehicle for investigative purposes, the officer must have "an articulable and reasonable suspicion that a law has been or is being violated." *City of Fargo v. Sivertson,* 1997 ND 204, ¶ 9, 571 N.W.2d 137. However, "traffic violations, even if considered common or minor, constitute prohibited conduct and, therefore, provide officers with requisite suspicion for conducting investigatory stops." *State v. Fields,* 2003 ND 81, ¶ 7, 662 N.W.2d 242. Indeed, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

▆▆▆▆ [¶ 14] In this case, Officer Arman observed Waliser's vehicle travel-

ing 52 miles per hour in a 40–mile–per–hour–construction zone. The violation of the speed limit supports Officer Arman's stop of Waliser's vehicle. Once he approached Waliser's vehicle, Officer Arman detected the odor of alcohol and learned both Waliser and Haibeck were under the legal drinking age. Officer Arman also recognized Haibeck from an arrest for an underage alcohol violation several days earlier. "[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Officer Arman removed Waliser from the vehicle and administered a field Breathalyzer test, which revealed Waliser had consumed alcohol, a fact she later admitted. Officer Arman also removed Haibeck from the vehicle, where he testified he continued to smell alcohol. Officer Arman administered a field Breathalyzer test, which showed Haibeck had been drinking alcohol that day. Haibeck also admitted the same to Officer Arman.

[¶ 15] Based on all of these circumstances, the officer had probable cause to believe the car contained additional contraband and properly searched the vehicle under the automobile exception to the warrant requirement. Therefore, both the search of the vehicle and subsequent seizure of contraband were reasonable under the Fourth Amendment and Article I, Section 8 of the North Dakota Constitution. The trial court improperly suppressed the contraband seized from the vehicle during the search, which includes methamphetamine, methamphetamine paraphernalia, and marijuana.

## B

[¶ 16] Haibeck asserts that all contraband in the vehicle was illegally seized because it was not found until the second search of the vehicle, which she contends occurred after Officer Arman failed to issue her a *Miranda* warning. The initial search, performed by another officer, revealed no contraband. However, we conclude this is inconsequential. Both searches are supported by the existence of probable cause and valid under the automobile exception. We do not necessarily believe the officer needed separate findings of probable cause to support each search of the vehicle, considering the searches were virtually contemporaneous. Officer Arman's initial observations regarding the odor of alcohol and age of the passengers likely supports each of the searches and subsequent seizure of the drug evidence. However, even if a separate finding of probable cause was required for the second search, this was surely satisfied by the discovery of Haibeck's necklace, which was a marijuana pipe emanating a marijuana smell.

## III

[¶ 17] Haibeck's necklace, later confirmed to be a marijuana pipe, was not found within the vehicle and, therefore, is not subject to the automobile exception. However, we conclude the trial court improperly suppressed this evidence.

[¶ 18] After Haibeck was taken back to Officer Arman's patrol car for questioning, they had the following exchange:

Officer: What's that on the necklace? Is that a pipe?

Krystal: Yes.

Officer: A marijuana pipe?

Krystal: Yes.

[¶ 19] Haibeck argues her response to Officer Arman's question, affirming the nature of the necklace as a marijuana pipe, requires suppression of that statement evidence, including the necklace and subsequent discovery of drug contraband, be-

cause she was not given a proper *Miranda* warning.

■■■ [¶ 20] Whether Haibeck was entitled to a *Miranda* warning depends on whether she was considered to be in police custody at the time of questioning,

> The constitutional triggers requiring *Miranda* warnings are custody and interrogation. *State v. Helmenstein*, 2000 ND 223, ¶ 13, 620 N.W.2d 581 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). When a person is in custody and being interrogated by law enforcement, the individual must be apprised, or warned, of his or her rights.

*Red Paint v. State*, 2002 ND 27, ¶ 10, 639 N.W.2d 503 (citation and quotations omitted); *State v. Fields*, 294 N.W.2d 404, 407 (N.D.1980) (holding, "custody is the determinative factor in deciding if the *Miranda* warnings are required."). However, this analysis is unnecessary for our purposes. Even if we were to assume that Haibeck was in custody for *Miranda* purposes, and there was no timely *Miranda* warning, suppression is inappropriate.

■■■ [¶ 21] The United States Supreme Court has recently stated that a *Miranda* violation does not require "suppression of the physical fruits of the suspect's unwarned but voluntary statements." *U.S. v. Patane*, —— U.S. ——, ——, 124 S.Ct. 2620, 2624, 159 L.Ed.2d 667, —— (2004). In *Patane*, the Court reasoned that:

> [T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. . . .

*Patane*, at 2626. There is no indication Haibeck's statements were involuntary, as examined under the standard for determining voluntariness:

> The totality of the circumstances must be examined to determine voluntariness. The inquiry focuses on two non-determinative elements: (1) the characteristics and conditions of the accused at the time of the confession, including the age, sex, race, education level, physical or mental condition, and prior experience with police; and (2) the details of the setting in which the confession was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control.

*See State v. Syvertson*, 1999 ND 134, ¶ 20, 597 N.W.2d 652. Therefore, the trial court improperly suppressed evidence of the necklace.

## IV

[¶ 22] Because we have determined the automobile exception applies in this case, it is unnecessary to consider the State's argument related to search incident to arrest, another exception to the warrant requirement of the Fourth Amendment to the United States Constitution.

## V

[¶ 23] On appeal, the State argues Haibeck's statements were improperly suppressed, despite the trial court's finding that they were taken in violation of her *Miranda* rights. We remand this issue to the trial court for determination of when Haibeck was in police custody, for *Miranda* purposes, and further determination of which statements, if any, should be suppressed.

■■■ [¶ 24] Under the Fifth Amendment to the United States Constitu-

tion, "[n]o person ... shall be compelled, in any criminal case, to be a witness against himself...." This privilege against "compelled self-incrimination," requires that:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*State v. Fasching*, 453 N.W.2d 761, 762–63 (N.D.1990) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

[¶ 25] As we stated above, whether such a warning is legally required depends on whether a suspect is considered to be within police custody and subject to interrogation. *Red Paint*, 2002 ND 27, ¶ 10, 639 N.W.2d 503.

> The test of custody is formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. The custody test is objective and does not depend on the arresting officer's subjective motive or thoughts.
>
> ... When evaluating whether a person was in custody, the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

*State v. Helmenstein*, 2000 ND 223, ¶¶ 13–14, 620 N.W.2d 581 (quotations and citations omitted). "If the police take someone into custody and question that person without warning about this basic constitutional right, the responses cannot be used as evidence to establish guilt." *Fasching*, 453 N.W.2d at 763. Again, however, physical fruits of the statements are admissible. *U.S. v. Patane*, —— U.S. ——, ——, 124 S.Ct. 2620, 2624, 159 L.Ed.2d 667, —— (2004). Officer Arman did not mention a *Miranda* warning until after all of the drug evidence had been seized, while driving Haibeck to the Burleigh County Detention Center:

> Officer: How long you been doing meth? I should *Mirandize* you. You know your rights, Krystal?
>
> Haibeck: Yes.
>
> Officer: You have the right to remain silent. You have the right to an attorney. How long have you been using meth?

[¶ 26] The trial court found that Haibeck was under custodial interrogation almost immediately after he placed her in his patrol car, before either search of the vehicle. According to the trial court, Haibeck was under custodial interrogation when Officer Arman "verified the odor of alcohol coming from her, [because] she simply wasn't free to go as she was subject to arrest." The fact that Officer Arman may have had authority to arrest Haibeck does not mean that she was in custody for purposes of *Miranda*. *State v. Murray*, 510 N.W.2d 107, 110 (N.D.1994) (holding, "the only relevant inquiry is how a reason-

able man in the suspect's position would have understood his situation").

[¶ 27] A person is not in custody for *Miranda* purposes merely because her freedom of movement is restrained by a police officer during a traffic stop. *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *see also Fasching*, 453 N.W.2d at 763. In *Berkemer*, the United States Supreme Court stated the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.* at 440, 104 S.Ct. 3138. Traffic stops are brief compared to lengthy station house interrogations, and occur in the "public view," an atmosphere far "less police dominated" than custodial interrogations at issue in *Miranda*. *Id.* at 437–39, 104 S.Ct. 3138.

[¶ 28] The temporary detention of an individual in a traffic stop is more analogous to a *Terry* stop than to a formal arrest and custody. *Id.* at 439, 104 S.Ct. 3138. During this temporary detention, a person is not in custody for *Miranda* purposes. *Berkemer*, 468 U.S. at 439–40, 104 S.Ct. 3138; *see also Fasching*, 453 N.W.2d at 763.

[¶ 29] During the second search of Waliser's vehicle, Officer Arman informed Waliser and Haibeck, "[d]o me a favor. Let's not be talking on that [cellular phone] cuz you're both under arrest right now." At this point, there is no doubt Haibeck was in custody for *Miranda* purposes, under the reasonable person standard. Therefore, we conclude any statements Haibeck made after that point should be suppressed. Specifically, Haibeck's exchange with Officer Arman with regard to the methamphetamine, marijuana, and paraphernalia found in the vehicle should be suppressed:

Officer: [While searching the passenger side of Waliser's vehicle] Say, Krystal, mind telling me about your white powder and your razor blade?

Haibeck: Yeah.

\* \* \* \*

Officer: And what would it be? We got meth or is it going to be coke?

Haibeck: Meth.

\* \* \* \*

Officer: Which bag is yours back there [in Waliser's trunk], Krystal?

\* \* \* \*

Officer: Wanna go back? We're going to take a look at that [Krystal's bag].

Haibeck: Yup.

\* \* \* \*

Officer: OK, nothing else back here, ma'am?

Haibeck: No.

Officer: This is the only thing that's yours?

Haibeck: And I forgot about that weed, otherwise I would have told you.

Officer: What about the meth?

Haibeck: That, too. I know I have a problem.

\* \* \* \*

[¶ 30] However, we remand for the trial court to determine the specific moment Haibeck was in custody for *Miranda* purposes, so as to determine which other statements should properly be suppressed. After Officer Arman verified the odor of alcohol emanating from Krystal, but before he informed her she was under arrest, a lengthy exchange took place between Officer Arman and Haibeck.

Officer: What's that on the necklace? Is that a pipe?

Haibeck: Yes.

Officer: A marijuana pipe?

Haibeck: Yes.

Officer: And were you smoking today?

Haibeck: [Inaudible]

\* \* \* \*

Officer: Wanna stick your tongue out, Krystal? Yeah, you were smoking today.

Haibeck: I said I was.

\* \* \* \*

Officer: What are we gonna do with you? How many times do I need to have to arrest you, Krystal?

Haibeck: This will be the last time.

\* \* \* \*

Officer: We are definitely going to be giving you guys rides. The question is, do I need to take you and have you bond out, Krystal?

Haibeck: I can't bond out.

Officer: You can't bond out; that means you're sitting till Monday. So, are you gonna maybe learn from this little, oh, ah, debacle we've had again, tonight?

Haibeck: Yeah, actually I have an appointment on Monday.

Officer: For?

Haibeck: The Freedom Center.

Officer: For the alcohol or the marijuana?

Haibeck: Both.

Officer: Krystal, I'm finding it hard to believe there is no marijuana in the car. So I'm gonna, I'm gonna search the stuff. Is there anything else I have to worry about?

Haibeck: No.

[¶ 31] The trial court, as fact-finder, should determine the point at which Haibeck was under custodial interrogation, under the standard set forth above. Based on that finding, the trial court should determine which statements made by Haibeck to Officer Arman should be suppressed.

## VI

[¶ 32] The trial court's order granting suppression of evidence and its order dismissing the case are reversed, and this case is remanded for determination of which statements, if any, should remain suppressed.

[¶ 33] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.