2007 ND 4

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Brian Q. GOEBEL, Defendant and Appellant.**

**No. 20060147.**

Supreme Court of North Dakota.

Jan. 11, 2007.

Terry W. Elhard, State's Attorney, Ashley, ND, for plaintiff and appellee.

Loren C. McCray, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Brian Q. Goebel appealed from a criminal judgment entered after a jury found him guilty of two counts of gross sexual imposition.  Goebel argues that the district court erroneously denied his motion to suppress incriminating statements, that the charges were time barred by the statute of limitations, and that the evidence was insufficient to support his conviction.  We affirm.

I

[¶ 2]   In June 2005, Goebel was charged with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly having sexual contact with his nephew and his niece, J.G. and D.G., when they were both less than fifteen years old.  At trial, J.G. testified that during a visit to his grandparents' house when he was six or seven years old, Goebel engaged in sexual contact with him.  Specifically, J.G. stated that he was taking a bath when Goebel entered the bathroom and removed him from the tub.  According to J.G.'s testimony, Goebel then touched J.G.'s penis with his hands and mouth.  Additionally, J.G. testified that later that same evening Goebel took him down to the basement and forced him to engage in anal sex.

[¶ 3]   At trial, the State also presented evidence that Goebel had engaged in two

separate instances of sexual contact with D.G. when she was about seven or eight years old. D.G. testified that the first instance occurred in the basement of her grandparents' house, where Goebel forced her to engage in vaginal intercourse. According to D.G., the second instance occurred around Christmas time while her family was watching television at her grandparents' house. In particular, she testified that Goebel reached into her pants and digitally penetrated her vagina while they sat together covered by a blanket on the couch.

[¶ 4] On appeal from the judgment of conviction, Goebel raises three major issues. First, he argues the district court erroneously denied his motion to suppress incriminating statements he made during an interview with law enforcement. Second, he claims the two charges against him were barred by the statute of limitations and should have been dismissed. Third, Goebel contends the evidence presented by the State was insufficient to support his conviction. We consider each of these arguments in turn.

II

[¶ 5] Several months before trial, Goebel moved to suppress all statements he made during an interview with law enforcement on May 10, 2005. At the suppression hearing, the district court heard testimony about the circumstances of that interview. Prior to the interview, law enforcement officers had been in contact with J.G. and D.G. regarding their allegations that Goebel had sexually abused them as children. On May 10, 2005, in the course of investigating these allegations, McIntosh County Sheriff Paul Peters drove to Goebel's place of employment and asked him to come to the Wishek Police Department. Shortly thereafter, Goebel drove in his own vehicle to the police station, where Sheriff Peters and Special Agent Calvin Dupree of the North Dakota Bureau of Criminal Investigation were waiting for him.

[¶ 6] The interview took place in the one-room office of the police department, which is in the city hall building. The only door to the office was closed, but not locked, during the interview. Sheriff Peters testified that the door was closed because he did not want the other city employees working in the building to hear the interview. Goebel and the two officers sat in chairs facing each other, with Goebel sitting in the chair closest to the door. Sheriff Peters testified that after he introduced Goebel and Agent Dupree, he informed Goebel that he would not be placed under arrest and would be able to leave that day, regardless of the outcome of the interview. However, Goebel testified the officers never told him that he could leave.

[¶ 7] Agent Dupree began the interview by informing Goebel that J.G. and D.G. had made allegations of sexual abuse. At that point, Agent Dupree verbally informed Goebel of his Miranda rights and provided him with a written copy of the rights as well. Goebel then signed a waiver of rights form. At the hearing, Goebel testified that he remembered being read his Miranda rights and signing something, but that he did not know what he was signing. There was conflicting testimony at the suppression hearing about whether Goebel ever asked for an attorney during the interview. Sheriff Peters and Agent Dupree both testified that Goebel never asked for an attorney, and if he had, the interview would have ceased immediately. On the other hand, Goebel testified that he asked for an attorney sometime during the interview.

[¶ 8] After Goebel signed the Miranda waiver, Agent Dupree questioned him for about an hour and fifteen minutes. Al-

though Goebel initially denied the allegations, he eventually admitted that he had some sexual contact with J.G. and D.G. After about an hour of questioning, Agent Dupree tape-recorded the last fifteen minutes of the interview. At the suppression hearing, Agent Dupree testified that he does not use a tape recorder at the beginning of an interview because he wants the subject to speak freely. Rather, Agent Dupree stated that he uses the tape recorder to take a taped statement from the subject near the end of an interview.

[¶ 9] After hearing all the testimony, the district court denied Goebel's motion to suppress the statements he made during the interview. The district court found that Goebel was free to leave and therefore not in custody during the interview. Additionally, the district court found that Goebel was read his Miranda rights, that he signed a waiver of rights form, and that he did not ask for an attorney.

[¶ 10] Goebel contends his incriminating statements should have been suppressed on three different grounds. He claims that the statements were obtained in violation of his Fifth Amendment right against self-incrimination, that his confession was involuntary, and that the North Dakota Constitution gives criminal defendants the right to have their custodial interrogations electronically recorded.

[¶ 11] When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Graf*, 2006 ND 196, ¶ 7, 721 N.W.2d 381. We recognize that the district court is in a superior position to assess the credibility of witnesses and weigh the evidence. *State v. Woinarowicz*, 2006 ND 179, ¶ 20, 720 N.W.2d 635 (citations omitted). Generally, a district court's decision to deny a motion to suppress will not be reversed if there is suffi-

cient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. *Id.* Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Graf*, at ¶ 7.

A

[¶ 12] Goebel argues the statements he made during the interview were obtained in violation of his Fifth Amendment right against self-incrimination. Goebel claims he was in custody during the interview, and therefore he was entitled to Miranda warnings. Additionally, Goebel argues his Miranda rights were violated because he asked for an attorney during the interview, but the officers did not cease questioning him at that point.

[¶ 13] A law enforcement officer is required to give Miranda warnings only when a person is subject to custodial interrogation. *State v. Genre*, 2006 ND 77, ¶ 23, 712 N.W.2d 624. A person is "in custody" if there is a formal arrest or restraint on his freedom of movement to the degree associated with a formal arrest. *Id.* In this case, we need not decide whether Goebel was in custody for Miranda purposes. It is undisputed that Goebel was informed of his Miranda rights both verbally and in writing prior to the start of the interview. It is also undisputed that Goebel signed a waiver of rights form at that time. Therefore, even if he was in custody during the interview, the officers complied with the requirements of the Fifth Amendment in that respect.

[¶ 14] Furthermore, we conclude Goebel's claim that he exercised his Fifth Amendment privilege during the interview by asking for an attorney is without merit. While it is well established that if a person asks for an attorney during custodial inter-

rogation, the interrogation must cease until an attorney is present, *see State v. Greybull*, 1998 ND 102, ¶ 15, 579 N.W.2d 161 (citing *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), here, the district court specifically found that Goebel did not invoke his right to counsel during the interview based on the testimony of Sheriff Peters and Agent Dupree. There is sufficient competent evidence supporting the district court's findings. The district court did not err in concluding that Goebel's Fifth Amendment rights were not violated and denying the motion to suppress on that ground.

B

[¶ 15] Goebel also contends the district court erroneously denied his motion to suppress because his confession was involuntary. In support of this claim, Goebel points in particular to his low intelligence level and "bad motives" on the part of law enforcement.

[¶ 16] When a confession is challenged on due process grounds, the ultimate inquiry is whether the confession was voluntary. *State v. Norrid*, 2000 ND 112, ¶ 18, 611 N.W.2d 866. A confession is voluntary if it is a product of the defendant's free choice rather than a product of coercion. *Id.* To assess voluntariness, we look at the totality of the circumstances. *State v. Helmenstein*, 2000 ND 223, ¶ 18, 620 N.W.2d 581. Our inquiry focuses on two elements: (1) the characteristics and conditions of the accused at the time of the confession, including age, sex, race, education level, physical and mental condition, and prior experience with police; and (2) the details of the setting in which the confession was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control. *State v. Syvertson*, 1999 ND 134, ¶ 20, 597 N.W.2d 652.

[¶ 17] Voluntariness of a confession depends upon questions of fact to be resolved by the district court. *Helmenstein*, 2000 ND 223, ¶ 18, 620 N.W.2d 581. Because the district court is in a superior position to judge credibility and weight, we show great deference to the district court's determination of voluntariness. *Id.* We will reverse only if the district court's decision is contrary to the manifest weight of the evidence. *State v. Sailer*, 500 N.W.2d 886, 888 (N.D.1993) (citations omitted).

[¶ 18] In this case, the record supports the district court's conclusion that Goebel's confession was voluntary. Goebel is forty-two years old and a high school graduate. He holds a steady job at a dairy farm and owns two homes in Wishek. He was previously incarcerated for six months and therefore has experience with law enforcement. Although there is some evidence that Goebel has a low intelligence level and cannot read or write well, this alone is not enough to render his confession involuntary.

[¶ 19] Furthermore, the setting in which Goebel's confession was obtained supports the district court's conclusion that the confession was voluntary. Goebel drove himself to the police station at the request of law enforcement. He was interviewed in the one-room police department with the door closed, but not locked. Goebel and the two officers sat in chairs facing each other, with Goebel seated nearest to the door. Agent Dupree interviewed Goebel for about an hour and fifteen minutes in the middle of the day. The district court found that Goebel was free to leave during the interview. There is no evidence that the officers used improper questioning tactics or in any way coerced Goebel into confessing. Goebel

claims Agent Dupree's failure to record the first hour of the interview shows that law enforcement had bad motives and a bad attitude toward him. However, Agent Dupree testified it is his common practice to use the tape recorder to take a taped statement at the end of an interview. Goebel has not pointed to any evidence showing improper conduct on the part of law enforcement during the interview.

[¶ 20] The district court's finding that Goebel's confession was voluntary is supported by sufficient competent evidence, and the district court's denial of Goebel's motion to suppress is not against the manifest weight of the evidence. Therefore, we conclude the district court did not err when it refused to suppress Goebel's confession on voluntariness grounds.

### C

[¶ 21] Goebel's final contention that the district court erroneously denied his motion to suppress is premised on the argument that Article I, Section 12 of the North Dakota Constitution gives criminal defendants the right to have their custodial interrogations electronically recorded. Article I, Section 12 of the North Dakota Constitution provides:

> In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

Goebel claims that we should require law enforcement to electronically record all custodial interrogations in North Dakota under this section of our Constitu-

tion, but he does not specify the particular provision under which we could find such a requirement. Goebel has not pointed to anything in the language or history of the North Dakota Constitution to support this argument. Although he cites to two state courts which have required recording of custodial interrogations, these cases were decided on state law bases. *See Stephan v. State*, 711 P.2d 1156, 1158 (Alaska 1985) (finding this requirement in the Due Process Clause of the Alaska Constitution); *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994) (imposing this requirement under the Minnesota Supreme Court's supervisory power to ensure the fair administration of justice in that state). While electronic recording of all interrogations may be good practice, Goebel has not persuaded us that such a right exists under our Constitution, nor has he persuaded us that we should, after the fact, exercise supervisory power to reverse his conviction. Therefore, we decline to hold that criminal defendants have a right to electronic recording of all custodial interrogations under Article I, Section 12 of the North Dakota Constitution.

[¶ 22] We conclude the district court did not err in denying Goebel's motion to suppress the incriminating statements he made during the interview with law enforcement.

### III

[¶ 23] Goebel claims the two charges based on the sexual abuse of J.G. and D.G. were barred by the statute of limitations and should have been dismissed.

[¶ 24] Prosecutions for the sexual abuse of child victims are subject to a particular statute of limitations and tolling provision, both of which are contained in N.D.C.C. ch. 29–04. Section 29–04–03.1, the statute of limitations, provides:

A prosecution for violation of sections 12.1–20–03 through 12.1–20–08 or of section 12.1–20–11 if the victim was under eighteen years of age at the time the offense was committed must be commenced in the proper court within seven years after the commission of the offense or, if the victim failed to report the offense within this limitation period, within three years after the offense was reported to law enforcement authorities.

Additionally, N.D.C.C. § 29–04–03.2 provides, "If the victim of a violation of chapter 12.1–20 is under the age of fifteen, the applicable period of limitation, if any, does not begin to run until the victim has reached the age of fifteen."

[¶ 25] We have previously construed these statutory provisions in *State v. Davenport*, 536 N.W.2d 686, 687–91 (N.D.1995), and *State v. Buchholz*, 2004 ND 77, ¶¶ 14–19, 678 N.W.2d 144. In *Davenport*, we considered § 29–04–03.1, the statute of limitations provision, and concluded that the "three-years-after-reporting language" was intended to extend the limitation period beyond seven years, if the victim failed to report the offense within the seven-year period. 536 N.W.2d at 690–91. Furthermore, the statute of limitations in § 29–04–03.1 and the tolling provision in § 29–04–03.2 must be read together. *See Davenport*, at 691. Therefore, if the victim is under the age of fifteen at the time of the offense, the statute of limitations does not begin to run until the victim reaches the age of fifteen, which extends the initial seven-year limitation period until the victim reaches the age of twenty-two. If the victim does not report the offense to law enforcement authorities within the seven-year period, but reports the offense sometime later, the limitation period runs for three years from the date the offense is reported.

[¶ 26] Moreover, in *Davenport,* we outlined the complex legislative history of the statute of limitations for sexual offenses against minors. 536 N.W.2d at 687. Section 29–04–03.1, the statute of limitations, was enacted in 1985 and amended in 1987 and 1993. *Davenport,* at 687. Section 29–04–03.2, the tolling provision, was enacted in 1987. *Davenport,* at 687. After considering legislative intent, we held that each extension of the statute of limitations applies retroactively "for existing offenses for which the statute of limitations had not expired under the prior law." *Buchholz,* 2004 ND 77, ¶ 16, 678 N.W.2d 144 (citing *Davenport,* at 689). Therefore, if the statute of limitations for an offense had not yet expired when the limitation period was extended, the extended period applies. As a result, the current version of the statute of limitations, as amended in 1993, may apply to offenses which occurred prior to 1993.

[¶ 27] As to J.G., the State charged Goebel with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly engaging in sexual contact with J.G. sometime between 1988 and 1991. J.G. was born in 1982. At the hearing on the motion to dismiss, J.G. testified that the sexual contact occurred when he was about six or seven years old. However, the contact most likely occurred when J.G. was about eight years old, because J.G. described the contact as occurring at his grandparents' house in Wishek, which they did not move into until December 1990. When he was eleven years old, J.G. reported the abuse to a therapist at the Children's Home Society in Sioux Falls, South Dakota, but the report never went any further. J.G. first reported the offense to law enforcement authorities on January 31, 2005, at the age of twenty-two.

[¶ 28] When N.D.C.C. § 29–04–03.1 was amended in 1993, the statute of limita-

tions against Goebel had not yet expired for the offenses committed sometime between 1988 and 1991. Therefore, under *Davenport*, the district court properly applied the current version of § 29–04–03.1 to the charge. Because J.G. was under the age of fifteen at the time of the offense, the statute of limitations did not begin to run until his fifteenth birthday in 1997. J.G. did not report the offense to law enforcement until January 31, 2005, which fell outside of the initial seven-year limitation period. Therefore, the prosecution had to be commenced within three years after January 31, 2005, when J.G. first reported the offense. Here, the State filed a criminal complaint against Goebel in June 2005, well within the three-year limitation period. Therefore, the district court did not err when it refused to dismiss the charge based on the sexual abuse of J.G.

[¶ 29] As to D.G., the State charged Goebel with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly engaging in sexual contact with D.G. sometime between 1993 and 1996. D.G. was born in 1987. She testified that multiple instances of sexual contact occurred when she was seven and eight years old. In December 2002, when she was fifteen years old, D.G. reported the abuse to a counselor at St. Alexius Hospital in Bismarck. At this time, law enforcement authorities were informed of the report.

[¶ 30] If the offenses occurred in 1993, the earliest date alleged by the State, the statute of limitations against Goebel would not have expired at the time the limitation period was extended in 1993. Thus, the district court correctly applied the current version of § 29–04–03.1 to this charge. Because D.G. was under the age of fifteen at the time of the sexual abuse, the statute of limitations did not begin to run until her fifteenth birthday in 2002. The offense was reported to law enforcement authori-

ties in December 2002, within the initial seven-year limitation period. The State filed a criminal complaint against Goebel in June 2005, when D.G. was eighteen years old. Because the prosecution was commenced within seven years as required by § 29–04–03.1, the district court did not err when it refused to dismiss the charge based on the sexual abuse of D.G.

## IV

[¶ 31] Finally, Goebel argues his conviction should be reversed because the evidence presented at trial was insufficient to support the guilty verdicts on both counts. Goebel claims that J.G.'s testimony about the sexual contact could not have been true because J.G.'s grandparents did not own a home in Wishek when he was six or seven years old. Furthermore, Goebel contends that D.G.'s testimony was "unspecific and unbelievable."

[¶ 32] The tasks of weighing the evidence and judging the credibility of witnesses belong to the jury. *State v. Laib*, 2005 ND 191, ¶ 6, 705 N.W.2d 815 (citation omitted). On appeal, we assume the jury believed the evidence supporting the verdict and disbelieved any contrary evidence. *Id.* A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty. *State v. Krull*, 2005 ND 63, ¶ 14, 693 N.W.2d 631.

[¶ 33] Our review of the sufficiency of the evidence to support a jury verdict is thus very limited. *State v. Bell*, 2002 ND 130, ¶ 25, 649 N.W.2d 243. We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. *Krull*, 2005 ND 63, ¶ 14, 693 N.W.2d 631. After viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences

reasonably to be drawn in its favor, we will only reverse a conviction if no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Barth*, 2005 ND 134, ¶ 19, 702 N.W.2d 1; *Bell*, at ¶ 25.

[¶ 34] In this case, the State presented sufficient evidence to support Goebel's conviction on two counts of gross sexual imposition. Both J.G. and D.G. testified at trial and implicated Goebel in detail. J.G. testified that the sexual contact occurred in about 1988 or 1989 when he was six or seven years old, which was prior to the time his grandparents owned the house in Wishek. However, it was reasonable for the jury to infer that the sexual abuse happened sometime after the house was purchased in December 1990, when J.G. was about eight years old. At trial, J.G. gave an accurate description of the inside of the house and stated that he had not been back there since the day after the incident. As to Goebel's argument that D.G.'s testimony was unbelievable, the jury chose to believe her, and we will not preempt the jury's credibility determination.

[¶ 35] Additionally, the State presented evidence regarding the law en-

forcement interview in which Goebel admitted he had sexual contact with J.G. and D.G. when they were children. A defendant's inculpatory words are substantial evidence on which a rational jury can convict. *Krull*, 2005 ND 63, ¶ 15, 693 N.W.2d 631. Although Goebel denied the allegations at trial and testified that he made the admissions only because he was scared, the jury chose not to believe him. Viewing the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found Goebel guilty of two counts of gross sexual imposition beyond a reasonable doubt.

V

[¶ 36] We affirm the criminal judgment.

[¶ 37] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.