2006 ND 77

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Ryan GENRE, Defendant and Appellant.**

**Nos. 20050238, 20050239, 20050247, 20050248.**

Supreme Court of North Dakota.

April 19, 2006.

James P. Wang (argued), States's Attorney, Minnewaukan, N.D., and Kathleen Kay Trosen (argued), State's Attorney, Fessenden, N.D., for plaintiff and appellee.

Robin L. Olson, Olson Johnston Law Office, Grand Forks, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Ryan Genre appeals from the district court orders denying his motions to suppress evidence and from the criminal judgments entered after he conditionally pled guilty. We affirm the district courts' judgments and orders denying Genre's motions to suppress.

I

[¶ 2] On February 20, 2004, Wells County Deputy Sheriff Allen Kluth stopped Genre for speeding. Upon approaching Genre's vehicle, Deputy Kluth saw a rifle lying on the backseat and an open container of alcohol on the vehicle's console. He also detected the odor of alcohol emanating from the vehicle and observed that Genre had bloodshot eyes and appeared to be nervous. Deputy Kluth asked Genre if he had any guns, weapons, or drugs, and Genre said there was a rifle on the backseat and a can of beer in the cup holder. Deputy Kluth asked Genre to exit the vehicle and Genre complied. At some point, Deputy Kluth asked Genre if he could search Genre and his vehicle, and Genre said, "Sure, go ahead."

[¶ 3] While conducting the search, Deputy Kluth seized a rolled up piece of tin foil containing a white residue from Genre's pants pocket. Deputy Kluth asked Genre what the tin foil was, and Genre responded, "You know what that is." Deputy Kluth asked Genre if he had any more, and Genre told him there were coffee filters under the backseat in a yellow bag. Deputy Kluth did not advise Genre of his *Miranda* rights, but told Genre he was under arrest and placed him in the squad car. Deputy Kluth searched the vehicle, seizing drugs, paraphernalia, beer, and a rifle.

[¶ 4] When Deputy Kluth told Genre he was going to jail, Genre requested to speak to the state's attorney. Deputy Kluth took Genre to the Harvey Police Department to meet with the Wells County State's Attorney where, on arrival, Genre was immediately given the *Miranda* warning. Genre said he understood his rights, did not request an attorney, and gave a voluntary statement. Genre admitted the coffee filters contained methamphetamine and he had been smoking methamphetamine earlier in the evening. Genre also described how he acquired the filters.

[¶ 5] During this meeting the parties discussed fines and jail time, and it was agreed that Genre would not go to jail that night because he gave some information and was considering working with law enforcement by participating in controlled purchases of drugs. Genre claims the state's attorney told him he would not be charged if he provided information and participated in some controlled buys.

[¶ 6] On February 23, 2004, Genre met with Deputy Kluth and Bureau of Criminal Investigations Agent Craig Zachmeier. No state's attorney was present at this meeting. Agent Zachmeier advised Genre his cooperation would only be considered to mitigate any fines or jail time and would not result in dismissal of any charges. Agent Zachmeier also advised Genre he did not have authority to make a plea agreement, but could make recommendations for sentencing. After Genre was informed he did not have to speak to the officers and was given the *Miranda* warning, Genre gave a statement. Genre was given thirty days to decide whether he wanted to work with law enforcement.

[¶ 7] On April 13, 2004, Genre met with Bureau of Criminal Investigations Agent Mark Hendrickson to discuss working as a confidential informant. Agent Hendrickson advised Genre what he would need to do to work with law enforcement, including staying sober and being truthful.

[¶ 8] At about the same time, Genre's attorney contacted the Wells County State's Attorney to try to reach a formal plea agreement. Genre offered to plead guilty to a misdemeanor marijuana charge. The state's attorney testified that a formal agreement was never reached.

[¶ 9] Genre met with Agent Hendrickson again on April 20, 2004 at the Lake Region Law Enforcement Center, located in Devils Lake, North Dakota. Genre admitted to recently using methamphet-amine. Agent Hendrickson told Genre he believed Genre had illegal narcotics in his vehicle and his hotel room at the Spirit Lake Casino and Resort, located in Benson County. After Agent Hendrickson asked Genre for consent to search Genre's hotel room and told Genre he would be detained until a search warrant was obtained, Genre gave consent both verbally and in writing. Law enforcement officers searched Genre's hotel room and vehicle, and seized Ecstasy and methamphetamine paraphernalia from the hotel room. Agent Hendrickson told Genre that he was trying to help Genre get clean so he could work for them. Genre was not arrested or charged at that time.

[¶ 10] Genre met with Agent Hendrickson again on April 23, 2004. Genre tested positive for narcotics and was arrested on the Wells County charges of possession with intent to deliver and possession of drug paraphernalia arising from the February 20, 2004, traffic stop. Genre was later arrested and charged in Benson County with possession of drug paraphernalia and possession of methamphetamine based on the evidence seized during the search of the hotel room on April 20.

[¶ 11] Genre brought motions to suppress evidence in both Wells County and Benson County. Both district courts denied his motions. Genre subsequently entered conditional pleas of guilty to the charges in both counties, reserving the right to appeal. Genre appealed from the orders denying his motions to suppress and from his convictions.

## II

[¶ 12] The standard of review is well established for reviewing a district court's decision on a motion to suppress:

> We will defer to a trial court's findings of fact in the disposition of a motion to

suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575 (quoting *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1). Questions of law are reviewed under the de novo standard of review. *Tollefson*, at ¶ 9.

### III

[¶ 13] Genre argues the district court in the Wells County action erred in denying his motion to suppress evidence found during the search of his vehicle and his person because Deputy Kluth violated Genre's Fourth Amendment rights when he seized Genre by ordering him out of the vehicle and searching him, and because Genre did not consent to the search.

### A

[¶ 14] Genre argues Deputy Kluth exceeded the scope of the traffic stop when he asked Genre to exit the vehicle and this continued seizure, beyond what was necessary to issue a traffic citation, violated his Fourth Amendment rights.

[¶ 15] Unreasonable searches and seizures are prohibited by U.S. Const. amend. IV and N.D. Const. art. I, § 8. "To justify a greater intrusion unrelated to the traffic stop, the totality of the circumstances known to the officer must meet the requisite level of reasonable suspicion under *Terry*." *State v. Guscette*, 2004 ND 71, ¶ 24, 678 N.W.2d 126 (quoting *United States v. Ramos*, 20 F.3d 348, 352 (8th

Cir.1994), rev'd on other grounds, 42 F.3d 1160 (8th Cir.1994)).

[¶ 16] Deputy Kluth testified that upon approaching the vehicle he saw a rifle on the backseat and an open beer can. The open can of beer was a violation of the open container law, N.D.C.C. § 39–08–18. Deputy Kluth also observed the odor of alcohol emanating from the vehicle and that Genre had bloodshot eyes and appeared to be nervous. Deputy Kluth's observations were sufficient to create a reasonable suspicion that criminal activity was afoot and to justify expanding the scope of the stop. Therefore, Genre's continued seizure was not unreasonable.

### B

[¶ 17] Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement. *State v. Wanzek*, 1999 ND 163, ¶ 7, 598 N.W.2d 811. Consent is one exception to the warrant requirement. *State v. Mitzel*, 2004 ND 157, ¶ 13, 685 N.W.2d 120. Under the standard of review for motions to suppress, "we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance." *State v. Haibeck*, 2004 ND 163, ¶ 8, 685 N.W.2d 512.

[¶ 18] At the Wells County suppression hearing, Genre testified in response to questions about the searches:

> [H]e asked me to step out of the vehicle and told me he was going to pat me down for his safety and then he asked me, while he was patting me down, if he could search the vehicle and I believe I said—I believe I just said yeah.

Deputy Kluth was asked if he performed a pat down of Genre after Genre exited the vehicle, and Deputy Kluth testified, "Yeah. At that time, I asked him if it was okay if I searched him and he stated it was okay." Deputy Kluth also testified to asking Gen-

re if he could search the vehicle and Genre responded, "okay, go ahead."

[¶ 19] The district court found Deputy Kluth asked for and Genre consented to the search of both his person and the vehicle. Applying the standard of review set out above, evidence supports the district court's conclusion Genre consented to both searches.

[¶ 20] Genre argues this case is comparable to *Mitzel,* 2004 ND 157, 685 N.W.2d 120. In *Mitzel,* the defendant invited the police into the house. *Id.* at ¶ 3. The defendant told the officer he would get the other person in the house, but when the officer said he had to accompany the defendant, the defendant shrugged in response. *Id.* The officer then followed the defendant to the bedroom. *Id.* at ¶ 4. This Court held, "[m]ere acquiescence to police authority is insufficient to show consent" and "[c]onsent must be unequivocal." *Id.* at ¶¶ 16–17. The test is whether a reasonable person would believe the person's conduct showed consent. *Id.* at ¶ 17.

[¶ 21] This case is different than *Mitzel.* Genre did not merely acquiesce to the officers authority. The district court found Deputy Kluth asked for consent to search and Genre gave explicit consent. We conclude the district court's findings are supported by evidence that Genre consented to search of both his person and his vehicle. We, therefore, affirm the district court's decision denying Genre's motion to suppress the evidence seized as a result of the search of Genre and his vehicle.

## IV

[¶ 22] Genre argues the district court in the Wells County action erred in denying his motion to suppress the statements he made during the traffic stop. Genre argues the stop went beyond a traffic stop when Deputy Kluth asked Genre to exit the vehicle, began questioning Gen-

re, and asked if he could search Genre and the vehicle. Genre argues his Fifth Amendment right against self-incrimination was violated when Deputy Kluth questioned him during the stop without giving him a *Miranda* warning.

[¶ 23] An officer is required to administer the *Miranda* warning when a person is subject to custodial interrogation. *State v. Martin,* 543 N.W.2d 224, 226–27 (N.D.1996). A suspect is in custody when there is a formal arrest or restraint on the suspect's freedom of movement to the degree associated with a formal arrest. *Id.* at 226. When determining if a person is subject to custodial interrogation the court examines all circumstances surrounding the interrogation and considers what a "'reasonable man in the suspect's position would have understood his situation.'" *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Whether a suspect is "in custody" and entitled to a *Miranda* warning is a mixed question of law and fact and, therefore, is fully reviewable on appeal. *Martin,* at 226.

[¶ 24] An individual detained during a routine traffic stop generally is not "in custody" for the purposes of *Miranda. See Berkemer,* 468 U.S. at 437–38, 104 S.Ct. 3138; *State v. Fasching,* 453 N.W.2d 761, 763–64 (N.D.1990). Likewise, ordering a driver out of the vehicle for officer safety or to issue a citation is reasonable and does not result in a custodial interrogation. *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *State v. Mertz,* 362 N.W.2d 410, 412 (N.D.1985) (ordering driver into a squad car was reasonable).

[¶ 25] Here, Genre was not "in custody" for purpose of Miranda during the traffic stop. Deputy Kluth saw a rifle

lying on the backseat of Genre's vehicle and did not know if the rifle was loaded. Deputy Kluth asked Genre to exit his vehicle, and Genre complied. Deputy Kluth's request was reasonable and did not transform the stop into a custodial interrogation.

[¶ 26] Deputy Kluth began questioning Genre after Genre exited the vehicle. During a traffic stop, a driver should reasonably expect to answer common sense investigatory questions; questioning during a traffic stop does not become a custodial interrogation simply because the officer asks a question that may establish an element of a crime. *Martin*, 543 N.W.2d at 227–28. Deputy Kluth detected the odor of alcohol upon approaching the vehicle, noticed Genre's eyes were bloodshot and observed Genre appeared to be nervous; therefore, Genre could reasonably expect to answer investigatory questions regarding alcohol consumption. *See In the Interest of Z.C.B.*, 2003 ND 151, ¶ 9, 669 N.W.2d 478. Deputy Kluth also saw an open can of beer and a rifle in the vehicle. Therefore, Genre could reasonably expect to answer questions regarding those items as well.

[¶ 27] Under these circumstances, a reasonable person in Genre's position would not believe that exiting his vehicle and answering general investigatory questions was a restraint on his freedom of movement to the degree associated with a formal arrest. Genre was not subject to a custodial interrogation, and the protections afforded to him under *Miranda* were not applicable. Genre's Fifth Amendment rights were not violated, and we affirm the district court's decision denying Genre's motion to suppress the statements he made during the traffic stop.

## V

[¶ 28] Genre argues the district court in the Benson County action erred in denying his motion to suppress evidence seized during the Benson County search of his vehicle and his hotel room because his consent was involuntary.

[¶ 29] On April 20, 2004, Genre met with Agent Hendrickson at the Lake Region Law Enforcement Center. When Genre was advised that he must be truthful if he wanted to work with law enforcement, he confessed to recently using methamphetamine. Agent Hendrickson then asked if he could search Genre's hotel room. Genre consented after he was told he would be detained until a warrant was obtained. Genre was informed that no charges would result if officers found anything illegal during the search; the search was to help Genre get clean so he could work with law enforcement. Genre ultimately agreed to the search, both verbally and in writing.

[¶ 30] Consent is an exception to the warrant requirement, but the consent must be voluntary. *Mitzel*, 2004 ND 157, ¶ 25, 685 N.W.2d 120. Voluntariness is a question of fact to be resolved by the trial court, and " 'because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness.' " *State v. Helmenstein*, 2000 ND 223, ¶ 18, 620 N.W.2d 581 (quoting *State v. Taillon*, 470 N.W.2d 226, 228 (N.D.1991)). The burden of proof is on the State to prove consent was voluntary. *Mitzel*, at ¶ 25.

[¶ 31] Consent is voluntary when it is the product of a free and unconstrained choice and not the product of duress or coercion. *Mitzel*, 2004 ND 157, ¶ 26, 685 N.W.2d 120. Whether consent is voluntary depends upon the totality of the circumstances. *Id.* at ¶ 25. To determine voluntariness we consider:

(1) the characteristics and condition of the accused at the time of the [consent], including age, sex, race, education level, physical or mental condition, and prior experience with police; and (2) the details of the setting in which the [consent] was obtained, including the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self control.

*Haibeck*, 2004 ND 163, ¶ 21, 685 N.W.2d 512 (quoting *State v. Syvertson*, 1999 ND 134, ¶ 20, 597 N.W.2d 652). No one factor is determinative. *Mitzel*, at ¶ 26.

[¶ 32] The district court concluded Genre voluntarily gave consent to search his hotel room and vehicle. The district court considered the characteristics and condition of Genre at the time of the consent, including his prior contact with law enforcement, his education level, and his mental state. The court also considered Genre's recent drug use and the effect it could have on his mental capacity, but concluded the drug use did not render the consent involuntary. These facts support the court's conclusion that the first factor does not weigh in favor of or against finding consent was voluntary.

■ [¶ 33] After thoroughly reviewing the second factor, the district court concluded it favored finding the consent was voluntary. The court found the following facts in favor of voluntariness: Genre voluntarily met with agents, officers did not attempt to exert any physical control, Genre made a call on his cell phone during the interview which officers did not attempt to prohibit, and Genre was not in custody at the time he gave consent. The court considered the officer's statement to Genre that, if he did not consent to the

search, he would be detained until the officer was able to obtain a warrant. Telling a defendant he will be detained until a search warrant is obtained does not automatically invalidate consent. *Mitzel*, 2004 ND 157, ¶ 28, 685 N.W.2d 120. The court also concluded the officers were not unreasonably coercive, although it found the officers' implied promises of lenity if Genre gave consent did weigh in favor of involuntariness. *State v. Pickar*, 453 N.W.2d 783, 787 (N.D.1990). The court found the officers' non-confrontational attitude was intended to induce consent, but did not amount to coercion. The court went on to conclude Genre's will was not overborne at the time of giving consent, and therefore, the confession was not the product of coercion.

[¶ 34] The district court's finding that the consent was voluntary is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence. Therefore, we affirm denial of Genre's motion to suppress evidence seized as a result of the search of his hotel room and vehicle.

## VI

■ [¶ 35] Genre argues the district courts in both the Wells County and Benson County actions erred in denying his motions to suppress the statements he made to the state's attorney and investigating officers because the statements were made during a plea negotiation and are inadmissible under N.D.R.Crim.P. 11.

[¶ 36] Rule 11(d), N.D.R.Crim.P., states, "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by N.D.R.Ev. 410." [1] Rule 410, N.D.R.Ev., provides:

---

1. N.D.R.Crim.P. 11(d)(6) was amended effective March 1, 2006. When existing rules are

amended or new rules are added this Court will apply those rules to actions then pending

Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with and relevant to any of the foregoing withdrawn pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

[¶ 37] To determine whether a discussion constitutes a plea negotiation the court must consider the totality of the circumstances and apply a two-tiered analysis. *See, e.g., United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978). The court must first determine whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion. *Id.* If the accused exhibited such an expectation, the court must determine whether the expectation was reasonable given the totality of the objective circumstances. *Id.* When making this determination the court must distinguish between "those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." *Id.* at 1367; *see also United States v. Hare,* 49 F.3d 447, 450 (8th Cir.1995) (Fed.R.Evid. 410 does not apply to statements made either before or after plea negotiations). Whether a statement is given in the course of a plea negotiation is a mixed question of fact and law, subject to the de novo standard of review. *United States v. Morgan,* 91 F.3d 1193, 1195 (8th Cir.1996).

[¶ 38] Genre met with law enforcement officers on several occasions between February 20, 2004, and April 23, 2004. Genre argues he subjectively believed he was engaged in plea negotiations during these meetings. Genre testified at the suppression hearing that he thought he had reached a formal plea agreement on February 20, but if that was the case, his subsequent actions contradicted his belief. As late as April 13, 2004, Genre's attorney contacted the state's attorney to discuss a possible plea agreement. Genre's attorney told the state's attorney Genre would be willing to plead guilty to a misdemeanor marijuana charge. This raises serious doubt whether Genre subjectively believed he had reached a formal plea agreement with the state's attorney on February 20.

[¶ 39] Even if Genre subjectively believed he was engaged in plea negotiations during these meetings, that belief was unreasonable. When determining whether a suspect's belief is reasonable, a court considers factors such as whether the suspect was in custody or charged with a crime and whether there was any discussion of pleas or charges. *See United States v. Guerrero,* 847 F.2d 1363, 1368 (9th Cir.1988). The court also considers whether normal plea discussion events occurred, including: (1) a specific plea offer is made; (2) a deadline to plead is imposed; (3) an offer to drop specific charges is made; (4) discussion of sentencing guidelines for the purpose of negotiating a plea; and (5) a defense attorney is retained to assist in the formal plea bargain process. *See Morgan,* 91 F.3d at 1196.

[¶ 40] During the February 20, 2004, meeting, after the traffic stop, Genre was in custody, but had not been charged. The parties did not discuss any specific charges

unless their application is not feasible or would work an injustice. *In the Interest of T.F.,* 2004 ND 126, ¶ 8, 681 N.W.2d 786. In this case, the amendment to Rule 11 was not a substantive change, but was made to incorporate federal form and style. *Minutes of the Joint Procedure Comm.* 28 (April 29–30, 2004). Therefore, we will apply the new version of the rule.

or pleas, and the only agreement reached was that Genre would not go to jail that night because he provided some information and was considering working with law enforcement. In addition, normal plea discussions did not take place during the February 20 meeting. Genre did not offer to plead guilty to anything. He was not given a deadline to agree to plead guilty to any charge. Although the district courts found the state's attorney did say she might not charge Genre if he cooperated with law enforcement and made some controlled buys, Genre did not agree to work with law enforcement until a later date and never actually made any controlled buys. There was only general sentencing discussion, and that discussion was not for the purpose of negotiating a plea. Genre's attorney was not present. We conclude any belief on Genre's part that a plea negotiation took place during the February 20 meeting was unreasonable.

[¶ 41] The admissions Genre made during the February 20 meeting were made as part of an arrangement to keep Genre out of jail that night, not as part of a plea negotiation. The language of N.D.R.Ev. 410 is clear; the rule only applies to statements made in connection with and relevant to a withdrawn plea of guilty, a plea of nolo contendere, or an offer to plead guilty or nolo contendere. It does not apply to offers to cooperate. An offer to cooperate is not the same as an offer to plead guilty. *See, e.g., Guerrero*, 847 F.2d at 1367. The only offer made on February 20 was for Genre to cooperate with police, and in exchange Genre would not go to jail that night and his cooperation would be taken into consideration when he was charged.

[¶ 42] We also conclude it was unreasonable for Genre to believe he was engaged in plea negotiations during the meetings with law enforcement officers af-

ter February 20, 2004. At each of these meetings the officers informed Genre he did not have to speak to them and they did not have the authority to offer him a plea agreement. No pleas or charges were discussed, and Genre did not offer to plead guilty to any charge. During this time period, Genre's attorney attempted to begin plea discussions with the Wells County State's Attorney, but Genre was not involved in these discussions and they are not at issue. Any statement made in an attempt to cooperate, either before or after a plea agreement has been reached, is not entitled to the protection of Rule 410. *Hare*, 49 F.3d at 451. We conclude the statements Genre made to law enforcement following the February 20 meeting were offered unconditionally in an effort to cooperate with the hope of receiving some type of assistance and were not plea negotiations, and therefore, Rule 410 is not applicable.

[¶ 43] We conclude the statements Genre made during the meetings with law enforcement, including the February 20 meeting with the state's attorney, were made in an attempt to cooperate and were not made as part of a plea negotiation, therefore N.D.R.Ev. 410 is not applicable. We affirm the district courts' denial of Genre's motions to suppress the statements.

## VI

[¶ 44] We conclude the district courts did not err in refusing to suppress evidence produced in the search of Genre's vehicle, Genre's statements during the vehicle stop, evidence produced in the search of Genre's hotel room, and Genre's subsequent statements to law enforcement officers. We affirm the district courts' judgments and orders denying Genre's motions to suppress.

[¶ 45] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.