# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 217

State of North Dakota,                                    Plaintiff and Appellee

v.

Alexander Lee Gothberg,                            Defendant and Appellant

## No. 20240138

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Sarah W. Gereszek, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Jessica J. Ahrendt, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]  Alexander Gothberg appeals from a criminal judgment entered after he conditionally pled guilty to six counts including various drug-related offenses, child endangerment, and child neglect. Gothberg argues the district court erred in denying his motion to suppress and in ruling he consented to law enforcement entering his apartment, and alternatively, applying the emergency exception. Gothberg further argues neither the plain view doctrine nor the inevitable discovery doctrine justified the "unwarranted search" of his home. We affirm.

I

[¶2]  On April 28, 2023, at approximately 9:42 a.m., Gothberg called 911 to report that he believed his two-year-old child overdosed from consuming a fentanyl pill, prompting law enforcement to be dispatched to his apartment building. Officer Hoffman and Sergeant Fuka arrived within minutes and announced "police" several times upon entering the building because they did not have Gothberg's apartment number. Gothberg thereafter opened his apartment door holding a wet, wide-eyed child and began describing what happened, telling the officers his two-year-old "was in here," while walking back towards a bedroom with the child in his arms. Gothberg did not close his apartment door. Officer Hoffman and Sergeant Fuka testified they believed they were to follow Gothberg inside of his apartment to provide assistance to the child.

[¶3] While Gothberg, Officer Hoffman, and Sergeant Fuka were in the apartment, Gothberg explained what happened, telling them that he was in the bathroom when he heard his five-month-old child crying. He went to the living room and found his two-year-old child unresponsive with no pulse and not breathing. Believing that the child had ingested fentanyl, Gothberg administered a dose of Narcan to the child, performed C.P.R., and held the child under running water in the shower, and the child regained consciousness. Gothberg disclosed he was a recovering addict.

[¶4]   Once an ambulance arrived, Officer Hoffman ran the two-year-old child to the paramedics and followed them to the hospital. While there, he remained in frequent contact with Sergeant Fuka because the hospital was requesting information about what and how much the child had ingested. Sergeant Fuka remained in the apartment attempting to ascertain what the child had ingested. Other officers arrived on scene to assist. Sergeant Fuka and other officers made observations of the apartment being in a state of disarray and was so cluttered it was difficult to walk without stepping on something. Gothberg pointed out a pen tube laying on the floor in the kitchen and suggested the child may have put it in her mouth and ingested fentanyl from it. Given the clutter of the home, that seemed unlikely to officers since Gothberg had left the child in the living room and found the child in the living room. Sergeant Fuka asked Gothberg if there was something in the living room the child may have ingested. Gothberg told the officers to "go ahead and look." The officers observed a powder on the coffee table in the living room, which they believed to be fentanyl.

[¶5]   Detective Gilpin arrived at the apartment, heard some of the conversation between Gothberg and Sergeant Fuka, and read Gothberg his *Miranda* rights. Gothberg continued his conversation with the officers and admitted there had been an open bag of powdered fentanyl on the coffee table that he flushed down the toilet before law enforcement arrived.

[¶6]   Child Protective Services was called around 15-20 minutes into the encounter to take Gothberg's remaining five-month-old child into its care. While waiting for CPS to arrive, officers asked Gothberg if he had any weapons in the apartment. Gothberg informed the officers there was a handgun in his bedroom. After attempting to enter the bedroom, Gothberg was told not to enter or attempt to enter the bedroom. Gothberg agreed the officers could secure the handgun, told officers it was in a safe, and provided the code to the safe. The handgun was not in the safe, but the officers observed approximately 30 pills in the safe, which they believed were controlled substances. Once CPS arrived and secured the remaining child, Gothberg was arrested and escorted out of the apartment. All of the officers left when CPS and Gothberg did. Testimony indicated that no drawers, cabinets, or "anything like that" were opened during the encounter, and nothing was seized or searched until a warrant was issued.

[¶7] On May 9, 2023, Gothberg was charged with 14 counts, including child endangerment, neglect, and various drug-related offenses. Gothberg filed a motion to suppress and dismiss arguing eight of the drug-related counts should be dismissed under N.D.C.C. § 19-03.1-23.4, the overdose prevention and immunity statute, and the emergency aid, consent, and exigent circumstances exceptions to the warrant requirement were not applicable to the remaining counts, and therefore, the evidence should be suppressed and the remaining charges against him dismissed. The State responded, conceding Gothberg was immune from prosecution for eight counts under N.D.C.C. § 19-03.1-23.4, but objected to the suppression of any evidence and dismissal of the remaining six counts under the consent, emergency, and plain view exceptions to the warrant requirement.

[¶8] On February 16, 2024, the district court entered its order denying the motion to suppress and dismiss. The court found under the totality of the circumstances, based on Gothberg's affirmative conduct, that he consented to Officer Hoffman and Sergeant Fuka entering his apartment and voluntarily directed law enforcement to the locations of evidence located in the home. The court alternatively held the emergency exception to the warrant requirement applied—in the event law enforcement made a warrantless, unconsented entry into Gothberg's apartment or remained beyond the purpose of the consent. The court concluded neither the plain view nor inevitable discovery exceptions applied because the search warrant was valid, and no items were seized until after the search warrant was obtained. Gothberg conditionally pled guilty to the remaining six counts, subject to his right to appeal the issues raised in his suppression motion. A criminal judgment was entered. Gothberg timely appealed.

II

[¶9] On appeal, Gothberg argues the district court erred in ruling he consented to law enforcement entering his apartment, applying the emergency aid exception, and neither the plain view nor the inevitable discovery doctrine justified the "unwarranted search" of his home. The State argues the court did not err in ruling Gothberg consented to law enforcement entering his apartment

or in finding the emergency exception to the warrant requirement applied, and no warrantless search of Gothberg's residence occurred.

[¶10] This Court's standard for reviewing a district court's decision on a motion to suppress is well-established:

> We defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Casatelli*, 2021 ND 11, ¶ 8, 953 N.W.2d 656. Questions of law are reviewed de novo. *State v. Genre*, 2006 ND 77, ¶ 12, 712 N.W.2d 624.

[¶11] "The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures." *State v. Terrill*, 2018 ND 78, ¶ 7, 908 N.W.2d 732. "Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement." *Genre*, 2006 ND 77, ¶ 17. Consent is an exception to the warrant requirement. *Id.*

[¶12] In cases involving consent to enter a home, this Court has held that "to sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police." *State v. Mitzel*, 2004 ND 157, ¶ 14, 685 N.W.2d 120. Ordinarily in cases involving consent to enter a home, entry is preceded by an exchange between a police officer and an occupant in which the officer makes an inquiry and in response the occupant verbally or physically reacts in a manner that may be interpreted as consent. *See id.* at ¶ 3. While consent cannot be implied from silence or failure to object, consent can be implied. *Id.* at ¶ 14. "The existence of

4

consent is a question of fact to be determined from the totality of the circumstances." *Id.* at ¶ 13. "The scope of an individual's consent is determined by 'considering what an objectively reasonable person would have understood the consent to include.'" *State v. Odom*, 2006 ND 209, ¶ 10, 722 N.W.2d 370 (quoting *United States v. Urbina*, 431 F.3d 305, 310 (8th Cir. 2005)). "Consent must be proven by clear and positive testimony" and be "unequivocal." *Mitzel*, at ¶ 17.

[¶13] Whether consent was voluntarily given considers examination of the totality of the circumstances at the time it was given. *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410; *State v. Discoe*, 334 N.W.2d 466, 467 (N.D. 1983). Factors that may be considered in determining the totality of the circumstances are the characteristics and condition of the accused at the time of consent and the details of the setting in which consent was obtained, though no one factor is determinative. *Discoe*, at 467-68. "To be voluntary, the consent must not be coerced by explicit or implicit means or by implied threat or covert force." *Avila*, at ¶ 16. We recognize that a district court is in a much better position to judge the weight and credibility of witnesses; therefore, on appeal, we show great deference to the court's determination of voluntariness by refusing to reverse its decision unless it is contrary to the manifest weight of evidence. *Discoe*, at 468.

[¶14] The district court found Gothberg voluntarily consented to law enforcement entering his apartment to assist his two-year-old child. Specifically, the court found:

> [T]hat under the totality of the circumstances, Gothberg's affirmative conduct (calling 9-1-1, his appearance at his apartment door with the child when the police announced their presence, leaving the door open for them to enter, and explaining to them information about the emergency) would lead a reasonable person to believed [sic] that Gothberg wanted and consented to Officer Hoffman and Sergeant Fuka following him into his apartment.

[¶15] The district court's finding is supported by testimony. The totality of the circumstances indicates Gothberg voluntarily consented to law enforcement entering his home to help his child. Gothberg's consent for Officer Hoffman and Sergeant Fuka to enter his apartment can be established by the following

affirmative conduct: he called 911 to report his minor child had overdosed, providing his address while doing so; he opened his apartment door to alert his location to Officer Hoffman and Sergeant Fuka after they called out "police" in the apartment building; and he left his apartment door open and described the situation to them—including where the child was—while walking toward a bedroom in his apartment. An objectively reasonable person would have concluded Gothberg consented to Officer Hoffman and Sergeant Fuka following him into his apartment to assist his child.

[¶16] In *Mitzel,* police officers responded to a call from a neighbor reporting a domestic disturbance. 2004 ND 157, ¶ 3. The officer knocked on the defendant's door, explained that he was there to investigate, and asked the defendant if he minded if he came in. *Id.* The defendant let the officer into the house and told the officer he would get the other person in the house. *Id.* The officer then said he had to accompany the defendant, and the defendant shrugged in response. *Id.* The officer followed the defendant to the bedroom and this Court held, "[m]ere acquiescence to police authority is insufficient to show unequivocal consent." *Id.* at ¶¶ 16-17. This case is distinguishable from *Mitzel*, where the defendant merely acquiesced to an officer's statement of authority. Here, Gothberg called for help and let the officers enter his apartment so they could assist his child without any assertion of authority. Gothberg's affirmative conduct is objectively consistent with providing the officers consent to enter his apartment. After entry into his home, Gothberg continued to actively converse and cooperate with law enforcement.

[¶17] In considering the voluntariness of Gothberg's consent, the district court found the "situation was created by [Gothberg] and his need for emergency services" and "[t]he record is void of any actions that law enforcement tried to pressurize the situation so as to compel Gothberg to disclose information that could be used in a criminal prosecution." Our review of the record leads us to the same conclusion. Gothberg initiated contact with officers by calling 911 to request assistance and opening his apartment door after they announced "police" several times in the building. Moreover, while holding the child in his arms, he began describing the situation to Officer Hoffman and Sergeant Fuka.

[¶18] As to the scope of Gothberg's consent, it was not limited to a specific area or time frame while officers were in his apartment. Gothberg told officers to "go ahead and look" or said they could "look" in the living room when they asked if the child possibly ingested something there. This Court previously concluded there was consent to search when, after police asked to search a defendant's vehicle, the defendant responded: "We have nothing to hide. Go ahead." *See State v. Lange*, 255 N.W.2d 59, 64-65 (N.D. 1977), abrogated on other grounds by *Illinois v. Gates*, 462 U.S. 213 (1983). An objectively reasonable person would have considered Gothberg's statement to "look" in the living room as providing consent to enter and look around the living room for the substance the child may have ingested. Additionally, after being given *Miranda* warnings, Gothberg voluntarily interacted with the officers' queries about what exactly and how much the child ingested that caused her to overdose. Furthermore, after being asked about the possibility of a firearm in the apartment, Gothberg told officers he had a firearm located in a safe in his bedroom and provided them the combination. Gothberg consented to officers searching his safe—a location outside the scope of the consent provided up until this point. As noted by the district court, at no time did Gothberg direct police officers to leave.

[¶19] Gothberg asserts that the interaction was the product of "mere acquiescence" and any consent given was "involuntary" due to the "threat of force" and Gothberg's "distraught" condition. Gothberg's argument also completely ignores the fact that he is the one who initiated contact with law enforcement and let them into his home. Gothberg was free to move about his apartment until it was discovered that a firearm was contained in his bedroom. Gothberg was merely restricted from entering his bedroom once this information was disclosed. Gothberg was not handcuffed during the encounter. The record is void of any instance where Gothberg instructed law enforcement to leave, withdrew consent, or limited their access.

[¶20] Gothberg has failed to show, even if his consent extended only to Officer Hoffman and Sergeant Fuka, what evidence was obtained by other officers, based on their observations, and used in the affidavit supporting the request for the search warrant. Gothberg has failed to identify specifically what items should be suppressed due to the officers allegedly acting beyond the area to

7

which he gave consent. Therefore, there is sufficient competent evidence supporting the district court's findings, and the court's decision is not contrary to the manifest weight of evidence. Based on the totality of the circumstances, the court did not err in concluding the officers' entry into Gothberg's home and search for items related to the ingestion of drugs by the child were justified under the consent exception to the warrant requirement.

## III

[¶21] We do not address other issues raised, because they are either unnecessary to the decision or are without merit. The district court's order denying Gothberg's motion to suppress and dismiss is affirmed.

[¶22] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr