# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

### 2026 ND 68

---

State of North Dakota,                                     Plaintiff and Appellee

    v.

Jodi L. Cooper,                                             Defendant and Appellant

---

### No. 20250134

---

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Lonnie Olson, Judge.

AFFIRMED.

Opinion of the Court by Fair McEvers, Chief Justice.

Meggan J. Crosby, Assistant State's Attorney, Devils Lake, ND, for plaintiff and appellee; submitted on brief.

Ulysses S. Jones, Devils Lake, ND, for defendant and appellant; submitted on brief.

**Fair McEvers, Chief Justice.**

[¶1]   Jodi Cooper appeals from a criminal judgment after the district court denied her motion to suppress and she entered a conditional guilty plea, preserving her right to appeal. An amended criminal judgment was subsequently entered to reflect her conditional plea under N.D.R.Crim.P. 11. Cooper argues the court erred in denying her motion to suppress. We conclude Cooper was not subjected to unlawful custodial interrogation when she admitted to smoking marijuana a few hours earlier, law enforcement did not impermissibly extend the stop of her vehicle to allow a K-9 unit to arrive, and probable cause supported the search of her vehicle. We affirm.

I

[¶2]   In June 2024, the State charged Cooper with count 1, unlawful possession of drug paraphernalia—use SI, SII, SIII, a class A misdemeanor; count 2, endangerment of a child or vulnerable adult, a class C felony; count 3, driving under suspension, a class B misdemeanor; count 4, possession of drug paraphernalia—marijuana, an infraction; and count 5, possession of a controlled substance—marijuana, an infraction. The charges stem from a traffic stop of Cooper's vehicle.

[¶3]   On June 19, 2024, a North Dakota Highway Patrol trooper was on routine patrol on Highway 20, south of Devils Lake in Ramsey County. At approximately 4:00 p.m., the trooper observed a 1993 Chevrolet Silverado driving on the center line, almost coming into the southbound lane. The trooper initiated a traffic stop of the vehicle and walked up to the vehicle's passenger side. The trooper asked the driver, later identified as Cooper, for her identification, registration, and proof of insurance. Cooper had two children in the vehicle—a 10-year-old female in the front passenger seat and a 7-year-old male in the back seat. While at the vehicle, the trooper observed Cooper was shaking and could not seem to sit still. The trooper went back to his patrol vehicle to run a status check on her license and to check for warrants. The trooper learned Cooper's license was suspended.

1

[¶4]    The trooper returned to Cooper's vehicle and asked her to exit the vehicle. The trooper testified this was his standard practice because the juveniles were present. At first, Cooper did not want to get out, but she did after the trooper requested a second time. When they got to the front of his patrol vehicle, the trooper informed her that her license was suspended. While talking to her, the trooper observed Cooper could not stand still, she kept pacing, and her eyes were "really constricted," watery, and bloodshot. The trooper asked her if she was under the influence of anything, and Cooper admitted she had smoked a marijuana joint a few hours earlier. The trooper asked her if there was anything illegal in her vehicle; she looked back toward her vehicle and said no. The trooper then asked if he could search the vehicle, and she said no.

[¶5]    At that moment, Cooper went back to her vehicle and grabbed her phone. The trooper testified he thought she was upset at "why [he] was asking her to search the vehicle." The trooper testified he told her to put the phone down and go back to his car, but "[s]he didn't want to," so he grabbed the phone and put it down. The trooper placed her in handcuffs and told her she was being detained suspecting she was under the influence. This occurred at about 11 minutes into the stop. The trooper placed her in the back seat of his patrol vehicle and went back to Cooper's vehicle and contacted a parent or guardian of the children. The trooper testified a parent arrived about five minutes later and took custody of both children, and the trooper explained what was going on. The trooper asked the parent if he could talk to the children, advising the parent of *Miranda* rights. The trooper also spoke with the other parent who had arrived on the scene. The trooper testified he spoke with the children's parents for about 10 to 15 minutes.

[¶6]    Based on his observations and before conducting field sobriety tests, the trooper contacted K-9 handlers to conduct an open-air sniff of Cooper's vehicle. After contacting two other K-9 officers who were unavailable, the trooper was able to contact a Ramsey County K-9 deputy who was at home, off-duty, but could come to the scene. Suspecting she was impaired, the trooper asked Cooper if she would take field sobriety tests, and she consented.

[¶7]    During the period before the K-9 unit arrived, the trooper conducted three field sobriety tests outside of the patrol vehicle, during which Cooper was not

2

handcuffed. The trooper testified he conducted a horizontal gaze nystagmus test, a lack of convergence test, and a walk-and-turn test. The trooper testified Cooper did not exhibit clues of alcohol impairment and he was able to eliminate "alcohol and possibly drugs." The trooper, however, testified based on his training and experience that a person could still be impaired despite passing field sobriety testing. The trooper placed Cooper back into his patrol vehicle's back seat. The trooper testified he was writing the citation for driving under suspension when the deputy arrived on the scene with his dog and performed an open-air sniff of Cooper's vehicle.

[¶8] The deputy testified his dog made a "soft indication" on the passenger side of Cooper's vehicle. Based on the dog's alert, the trooper and the deputy searched Cooper's vehicle and discovered a glass smoking device with suspected methamphetamine residue, a green leafy substance suspected to be marijuana, and a smoking device with suspected marijuana residue. The trooper subsequently advised Cooper of her *Miranda* rights and placed her under arrest at approximately 4:56 p.m. Cooper was transported to the Lake Region Law Enforcement Center, where she was searched, and a correctional officer located a smoking device with suspected marijuana residue.

[¶9] In October 2024, Cooper moved to suppress all prearrest statements and evidence seized from the warrantless search of the vehicle she was driving and contraband found on her. The State opposed her motion. On November 19, 2024, the district court held an evidentiary hearing on the motion. At the hearing, the court received testimony from the trooper, who conducted the vehicle stop, and the Ramsey County sheriff's deputy, who arrived at the scene to conduct a dog sniff of the vehicle. Cooper submitted into evidence video of the stop, consisting of video from the patrol vehicle's front camera and from the trooper's body camera. In January 2025, the court issued a memorandum decision and order denying her motion to suppress.

[¶10] In March 2025, Cooper entered a conditional guilty plea, reserving her right to appeal the denial of her motion to suppress. The district court sentenced Cooper, and a criminal judgment was entered on counts 1, 2, 4, and 5, and count 3, driving under suspension, was dismissed. An amended criminal judgment

3

was subsequently entered to reflect a conditional guilty plea under N.D.R.Crim.P. 11 on counts 1 and 2.

## II

[¶11] Cooper argues the district court erred in denying her motion to suppress. Our standard for reviewing a district court's decision on a motion to suppress is well-established:

> We defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Grensteiner*, 2024 ND 218, ¶ 4, 14 N.W.3d 587 (quoting *State v. Casatelli*, 2021 ND 11, ¶ 8, 953 N.W.2d 656); *see also State v. Genre*, 2006 ND 77, ¶ 12, 712 N.W.2d 624. While the underlying factual disputes are findings of fact, whether the district court's findings meet a legal standard is a question of law. *State v. Rahier*, 2014 ND 153, ¶ 11, 849 N.W.2d 212.

[¶12] Cooper did not challenge the validity of the trooper's stop of her vehicle in the district court, nor does she challenge the stop on appeal. Rather, Cooper argues she was improperly questioned about criminal activity and her drug usage without being advised of her right to remain silent, and she challenges the warrantless search of her vehicle.

## III

[¶13] In denying Cooper's motion, the district court made specific factual findings about the trooper's interactions with Cooper after stopping the vehicle:

> At this time, [the trooper] testified that he noticed Cooper was shaking and could not sit still. [The trooper] went to the patrol vehicle and called in the stop, which included inquiring about

4

Cooper's driving privileges. Her driving privileges were relayed to [the trooper] as suspended. [The trooper] returned to the passenger side of the Cooper vehicle, and asked Cooper to come back to the patrol vehicle. This occurred about 8 minutes after the stop. After the first request, Cooper did not leave her vehicle. [The trooper] asked again, and this time Cooper did get out. They stood in front of the patrol [vehicle] and talked. [The trooper] testified that he noted that Cooper would not stand still. He noted that she was pacing, her eyes were very constricted, and were watering and bloodshot. [The trooper] testified that he thought there was some impairment in Cooper.

Cooper was informed of her driving under suspension. Cooper then returned to her vehicle, grabbed her phone, contrary to [the trooper]'s instructions. Cooper [sic] called the parents of the two children. This occurred about 11 minutes after the stop. In about one minute, Cooper was placed in the back of the patrol vehicle, and [the trooper] was outside. Cooper is heard on the video swearing profusely. About 4 minutes later, the children's father drove up to get the kids. Shortly after, [an officer] of the Devils Lake PD approached and got out of his patrol vehicle. Cooper is continuing to swear in the back of the patrol vehicle. [The trooper] talks with [the Devils Lake officer] and at one point tells [the officer] that the Cooper vehicle came across the center line into his lane. At the 20 minute mark after the stop, [the trooper] talks to the children's father, and after a minute, the mother also drives up to the scene. The children then get in with the parents and leave about the 25 minute mark. [The trooper] then calls for a K-9 officer to come to the scene of the stop.

[The trooper] testified that he has been trained in detecting drug impairment in drivers in 2020 in Bismarck. At some point previous to the field sobriety tests, [the trooper] did a criminal history check of some sort, and found Cooper to have a prior drug usage history. About the 27 minute mark, [the trooper] asked Cooper about drug usage, which she admitted to smoking a joint earlier in the day. He asked Cooper to perform the horizontal gaze nystagmus test, to which Cooper exhibited no clues. About the 27 minute mark, [the trooper] asked Cooper to perform a walk and turn test, which she passed. In [the trooper]'s opinion, that excluded alcohol impairment. The [field] sobriety tests were completed by the 35 minute mark, and Cooper was taken back into the patrol vehicle. [The trooper] commenced to fill out a citation for driving under

suspension. About two minutes later, the K-9 and handler, [a deputy] of the Ramsey County Sheriff's Office, drove up. Within 2 minutes the K-9 search was completed.

IV

[¶14] Cooper argues that the testimony and videos show she was questioned about criminal activity, she was not advised of her rights before the questioning, and she did not waive her right to remain silent.

[¶15] An officer must administer the *Miranda* warning "when a person is subject to custodial interrogation." *State v. Werner*, 2024 ND 229, ¶ 13, 15 N.W.3d 6 (quoting *Genre*, 2006 ND 77, ¶ 23); *see also State v. Martin*, 543 N.W.2d 224, 227 (N.D. 1996). This Court explained:

> A suspect is in custody when there is a formal arrest or restraint on the suspect's freedom of movement to the degree associated with a formal arrest. When determining if a person is subject to custodial interrogation the court examines all circumstances surrounding the interrogation and considers what a reasonable man in the suspect's position would have understood his situation.

*Werner*, ¶ 13 (quoting *Genre*, ¶ 23 (cleaned up)).

[¶16] Ordinary or routine traffic stops are not usually deemed custodial stops triggering the need for *Miranda* warnings. *Martin*, 543 N.W.2d at 227; *State v. Fasching*, 453 N.W.2d 761, 763-64 (N.D. 1990). In other words, an individual detained during a routine traffic stop generally is not "in custody" for *Miranda* purposes. *Genre*, 2006 ND 77, ¶ 24. "Likewise, ordering a driver out of the vehicle for officer safety or to issue a citation is reasonable and does not result in a custodial interrogation." *Genre*, ¶ 24 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *State v. Mertz*, 362 N.W.2d 410, 412 (N.D. 1985) (ordering driver into a squad car was reasonable)). "[A] driver should reasonably expect to answer common sense investigatory questions; questioning during a traffic stop does not become a custodial interrogation simply because the officer asks a question that may establish an element of a crime." *Id.* ¶ 26. This Court has further said:

6

Although we agree that "custodial interrogation" can take place in a police car, *Miranda* protection certainly does not extend to all questioning that takes place there. Instead, the determination of whether a person questioned in a police car is "in custody" must depend on the specific facts of each case. To make this determination, the factual situation, atmosphere, and physical surroundings during the investigation and questioning must be considered to ascertain the degree of police domination and restraint or compulsion. Consideration of these factors is essential for answering the ultimate inquiry of whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. Absent an arrest or a like restraint, a person is not "in custody" for purposes of *Miranda* even if the questioning takes place in a police car.

*Martin*, at 227 (cleaned up). Whether a suspect is in custody and entitled to a *Miranda* warning presents a mixed question of law and fact, fully reviewable on appeal. *Werner*, 2024 ND 229, ¶ 13; *Genre*, ¶ 23.

[¶17] Cooper contends that upon the trooper initially asking her to go to his patrol vehicle, "she was not free to leave" and the trooper's initial "direction" to her "caused her to be in detention and therefore it was required that she be advised of her [*Miranda*] rights before being questioned about criminal activity." After she got her phone from the vehicle, the trooper took the phone and advised her she was being detained for being under the influence. She asserts she was in custody when the trooper handcuffed her, which occurred about 11 minutes into the traffic stop. Cooper argues that the trooper's questions to her about drug usage were intended to get incriminating evidence without advising on her right to remain silent and that the trooper was trying to get information against her because the trooper's criminal history check of her showed previous cases involving drug usage. She contends when the questions were posed, the investigative stop was completed and the trooper had already determined a criminal offense occurred, so "there was nothing more to investigate" regarding her driving under suspension.

[¶18] The State, however, responds the district court did not err in finding the trooper's questions before the subsequent *Miranda* warnings were valid. The

State argues the trooper was engaged in an investigatory stop—justified by the trooper's observation of Cooper's demeanor and physical attributes, her previous drug history, and her admission to smoking marijuana and driving under suspension—and was still involved in an investigative stop when inquiring about driving under the influence.

[¶19] Cooper argues that she was "in custody" for *Miranda* purposes when she was asked to get out of her vehicle and go back to the trooper's patrol vehicle. We disagree. This Court has specifically said that "ordering a driver out of the vehicle for officer safety or to issue a citation is reasonable and does not result in a custodial interrogation." *Genre*, 2006 ND 77, ¶ 24.

[¶20] The trooper testified at the hearing about his observations of Cooper and suspected alcohol or drug impairment that he made while talking with her at her vehicle and at his patrol car. Neither Cooper nor the State dispute Cooper's admission—of having smoked marijuana a few hours earlier—occurred before she was initially detained and placed in handcuffs, around 11 minutes into the stop. The trooper further testified: Cooper went back to her vehicle to grab her phone; he told her to put the phone down, but she did not want to; so he "put her in handcuffs at that moment, and she was detained" as part of an investigation "and put in the back seat of [his patrol] car." He testified it was at that time that he also contacted a parent for the children. While the district court found Cooper was asked about her drug usage at the 27-minute mark, this error is insignificant as it is clear from review of the record that the conversation about her drug usage occurred before Cooper was placed in handcuffs.

[¶21] Courts have held "that neither handcuffing, *United States v. Rodriguez*, 711 F.3d 928, 935 (8th Cir. 2013), nor questioning in a patrol car, *United States v. Boucher*, 909 F.2d 1170, 1174 (8th Cir. 1990), necessarily triggers the *Miranda* rule." *United States v. Villanueva*, 116 F.4th 813, 820 (8th Cir. 2024). However, assuming without deciding that Cooper was "in custody" for *Miranda* purposes when the trooper initially handcuffed her and placed her in the back of his patrol vehicle, Cooper's admission to having smoked marijuana a few hours earlier occurred before this point in the trooper's investigation for her suspected impairment.

Cooper has not identified or cited to the record any other statements that should have been suppressed.

[¶22] Moreover, if custodial interrogation were present after she was placed in the patrol vehicle, the evidence elicited must still be testimonial. *State v. Chihanski*, 540 N.W.2d 621, 623 (N.D. 1995). For example, in *Fasching*, this Court held the district court should not have suppressed a deputy's observations of the defendant's physical condition and her performance during field sobriety tests and her blood test result. 453 N.W.2d at 764. This Court explained that while the defendant's answers about what she had drunk and where she had been were properly suppressed, "gathering of evidence other than communications did not transgress the constitutional bar against compelling testimony." *Id.* "[Field sobriety tests] only compel the suspect to exhibit his physical characteristics of coordination as a source of real or physical evidence which may be testified to by the officer observing the tests." *Id.* Here, the trooper's specific observations of Cooper's impairment, and the other evidence gathered, would not need to have been suppressed.

[¶23] On this record, the district court's finding that Cooper was not subject to an unlawful custodial interrogation is supported by substantial evidence, was not based on an erroneous interpretation of the law, and we are not left with a firm and definite conviction that a mistake has been made. We conclude the finding was not clearly erroneous.

V

[¶24] Cooper argues she did not consent to the search of her vehicle, no applicable exception applies, and anything found should be suppressed.

[¶25] The "automobile exception" to the Fourth Amendment's warrant requirement "allows law enforcement officers to search a vehicle for illegal contraband without a warrant upon establishing probable cause the vehicle contains contraband." *State v. Gefroh*, 2011 ND 153, ¶ 8, 801 N.W.2d 429.

> Under the automobile exception, law enforcement officers may search for illegal contraband without a warrant when probable

cause exists. Probable cause exists to search a vehicle if it is established that "certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." If a warrantless search of an automobile is made with probable cause, based on a reasonable belief arising out of the circumstances known to the officer that the automobile contains articles which are subject to seizure, the search is valid.

*Id.* (quoting *State v. Dudley*, 2010 ND 39, ¶ 7, 779 N.W.2d 369 (cleaned up)). "Once probable cause that a vehicle contains contraband is established, officers may search the vehicle because the ready mobility of the vehicle is an exigent circumstance justifying the exception to the warrant requirement." *Id.* "Allowing a drug-sniffing dog to sniff a vehicle is not a search within the meaning of the Fourth Amendment." *Id.* ¶ 9 (citing *State v. Ressler*, 2005 ND 140, ¶ 21, 701 N.W.2d 915). "A drug-sniffing dog indicating the presence of a controlled substance establishes probable cause." *Id.*

## A

[¶26] Cooper argues there was no "probable cause" to continue to detain her to conduct a K-9 sniff of the vehicle and the trooper unduly prolonged the traffic stop to allow a K-9 unit to arrive and conduct a search in violation of her rights.

[¶27] "During a lawfully-initiated traffic stop, the officer can conduct activities 'related to traffic enforcement but not absolutely necessary to issuing a traffic ticket.'" *State v. Sargent*, 2024 ND 121, ¶ 13, 8 N.W.3d 278 (quoting *State v. Marsolek*, 2021 ND 175, ¶ 10, 964 N.W.2d 730); *see also State v. Anderson*, 2024 ND 115, ¶ 8, 8 N.W.3d 323; *State v. Vetter*, 2019 ND 138, ¶ 7, 927 N.W.2d 435. An officer may conduct the following activities during a traffic stop:

[R]equesting the driver's license and registration, requesting that the driver step out of the vehicle, requesting that the driver wait in the patrol car, conducting computer inquiries to determine the validity of the license and registration, conducting computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and making inquiries as to the motorist's destination and purpose.

*Anderson*, ¶ 8 (quoting *State v. Phelps*, 2017 ND 141, ¶ 10, 896 N.W.2d 245). We have "rejected a *de minimis* time exception for extending a traffic stop for activity outside the mission of the stop without reasonable suspicion to support the expanded scope." *Id.* (internal quotation marks omitted) (quoting *Marsolek*, ¶ 12).

[¶28] "The Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention." *State v. Stands*, 2021 ND 46, ¶ 13, 956 N.W.2d 366 (cleaned up) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). However, "after the completion of the traffic stop duties, if the officer continues the seizure, he violates the Fourth Amendment 'unless the officer has a reasonable suspicion for believing that criminal activity is afoot.'" *Sargent*, 2024 ND 121, ¶ 13 (emphasis omitted) (quoting *Vetter*, 2019 ND 138, ¶ 8). This Court has explained when a traffic stop becomes an unconstitutional seizure:

> Traffic violations justify a stop by police officers. When an officer seizes an individual for a traffic violation, it justifies a police investigation of that violation. Because a routine traffic stop is relatively brief, it is more like a "Terry stop" than an arrest. The time it takes to complete the "mission" of the stop, to "address the traffic violation that warranted the stop and attend to related safety concerns," is a permissible length of time to detain someone. However, a stop may not extend longer than the amount of time necessary to effectuate the purpose of the traffic stop. An officer's seizure of a person is permitted only until the tasks tied to the traffic infraction are—or reasonably should have been—completed. A traffic stop prolonged beyond the "time reasonably required to complete the stop's mission" is unlawful. Unrelated inquiries are permitted during a stop as long as they do not prolong the stop and extend the time the individual is detained. A stop may be prolonged *only if the officer has reasonable suspicion to justify detaining the individual for inquiries unrelated to the stop*.

*Sargent*, ¶ 14 (emphasis added) (quoting *Marsolek*, 2021 ND 175, ¶ 9).

[¶29] Cooper contends none of the reasons for the basis of the K-9 sniff provided probable cause for a search of her vehicle. She also asserts she did not exhibit any clues on the field sobriety tests that the trooper administered to support a claim of drug impairment sufficient for a search of the vehicle.

[¶30] Cooper argues she was "seized" when she was told she was being detained and placed in handcuffs, and contends the traffic stop was unduly prolonged without reasonable suspicion to permit law enforcement to conduct a K-9 sniff. She contends the trooper had a "mere hunch" about unlawful activity; and her previous drug history was not an indication she was involved, or about to be involved, in unlawful activity. She argues, if the trooper believed contraband was in the vehicle, the vehicle could have been impounded and a search warrant obtained; and the totality of the circumstances reflect the trooper could have cited or arrested her long before the K-9 sniff occurred, and waiting for the K-9 unit to arrive unduly prolonged the stop.

[¶31] Here, in denying the motion, the district court found the evidence showed the K-9 sniff occurred "while the purposes of the traffic stop were still being performed," or while the trooper was drafting a citation for driving under suspension. The court found the trooper did not unreasonably extend the stop to allow time for the K-9 unit to arrive, particularly where a portion of the stop was to allow the minor children's parents to arrive and remove the children from Cooper's vehicle. The district court found, "[b]ased upon the previous findings of fact," the trooper had sufficient probable cause for a search of the vehicle under the automobile exception.

[¶32] "This Court looks to the totality of the circumstances while applying an objective standard to determine whether reasonable suspicion exists to justify prolonging a traffic stop." *Anderson*, 2024 ND 115, ¶ 16. "Whether the facts support a finding of reasonable articulable suspicion is a question of law, and thus, is fully reviewable by this Court." *Id.* (quoting *State v. Adan*, 2016 ND 215, ¶ 9, 886 N.W.2d 841). "The question for this Court is 'whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.'" *Id.* (quoting *State v. Franzen*, 2010 ND 244, ¶ 12, 792 N.W.2d 533). "Reasonable suspicion is not easily reduced to a methodical set of legal rules, but it does require more than a 'mere hunch.'" *Id.* (quoting *State v. Fields*, 2003 ND 81, ¶ 13, 662 N.W.2d 242).

12

[¶33] This Court has said an officer may consider an individual's nervousness and criminal history as factors to support a determination of reasonable suspicion. *See Sargent*, 2024 ND 121, ¶¶ 17-18. We have also said "[e]rratic driving, including veering, weaving, crossing the line of the driving lane, and nearly striking another vehicle, is a factor indicative of impairment." *State v. Berger*, 2004 ND 151, ¶ 14, 683 N.W.2d 897. "Belligerent, aggressive, and abusive conduct, and use of profanity, are relevant factors indicative of impairment." *Id.* ¶ 15. "Unusual nervousness and severe shaking indicate the person's physical faculties are not in their normal state and the person does not have normal control of [oneself]." *Id.* ¶ 16. "Glossy or watery eyes are indicative of impairment." *Id.* ¶ 17.

[¶34] Here, the trooper's observations of Cooper supported his suspicion of alcohol or drug impairment—including her shaking, inability to sit still, pacing, bloodshot and watery eyes, constricted eyes, previous drug history, and admission she smoked marijuana and was driving under suspension—constituted reasonable and articulable suspicion for the trooper continuing to detain her to investigate driving under the influence. The district court did not err in finding the stop was not unduly prolonged because the trooper was still attending to the "duty of the stop" by contacting a parent to pick up the children, contacting K-9 handlers, conducting field sobriety tests, and issuing citations while the dog sniff was being conducted.

[¶35] Considering the totality of the circumstances, we conclude there was reasonable and articulable suspicion Cooper was engaged in criminal activity, such that her continued detention until a K-9 unit arrived was lawful. The trooper did not impermissibly extend the stop of her vehicle to allow a K-9 unit to arrive. Moreover, the dog sniff of the vehicle established probable cause for the trooper and deputy's subsequent vehicle search.

B

[¶36] Cooper argues the K-9 did not alert on the vehicle, but rather the deputy directed the dog to pay attention to the front passenger door area. Here, the district court found Cooper presented no testimony—expert or otherwise—to

13

refute the deputy's testimony on the type of his dog's alert, i.e., a "soft" indication or alert; to show the deputy's dog "search" was contrary to policy; or to show the deputy directed the dog to give the "soft" alert. Rather, the court found her counsel's "conclusory argument" was not supported by any evidence and specifically found the dog "did alert on the Cooper vehicle." We conclude the court made specific findings on this issue and sufficient competent evidence supports the court's findings.

## VI

[¶37] Cooper also contends that "anything allegedly found on her person at the jail upon her arrest should be suppressed as this constitutes the fruit of the poisonous tree." However, as one noted treatise explains: "It now appears to be clearly established that when an arrested person has been delivered to the place of his forthcoming detention, he may be subjected to a rather complete search of his person." 3 Wayne R. LaFave, *Search & Seizure* § 5.3(a) (6th ed. Nov. 2024 Update) (discussing search upon arrival at place of detention). "This search may be conducted without a warrant, and requires no justification in the individual case other than that the person searched was lawfully arrested and is presently lawfully detained." *Id.* "There are two grounds upon which such a search is commonly upheld: (i) as a search incident to and reasonably contemporaneous with the preceding arrest; and (ii) as an inventory conducted to protect the arrestee's effects and to maintain the security of the detention facility." *Id.*

[¶38] Cooper has not argued that the stop of her vehicle was unlawful or that she was not properly arrested for driving under suspension. We have concluded she was lawfully arrested. It is also not clear this issue was preserved by her conditional guilty plea. Nevertheless, her argument is unavailing.

## VII

[¶39] We have considered Cooper's remaining arguments and conclude they are either unnecessary to our decision or are without merit. We affirm the amended criminal judgment.

14

[¶40] Lisa Fair McEvers, C.J.
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr
Mark A. Friese